Daniel McALEER and Local # 2350,
Communications Workers of America
(CWA), Plaintiffs,

v.

AMERICAN TELEPHONE & TELE-
GRAPH CO., Defendant.

Civ. A. No. 75–2049.

United States District Court,
District of Columbia.

June 9, 1976.

**436**

Gregory E. Kubash, Washington, D. C., for plaintiffs.

Robert W. Jeffrey, Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

GESELL, District Judge.

This is a sex discrimination case. Plaintiff McAleer was denied promotion by American Telephone & Telegraph Co. (AT&T). He was entitled to promotion under the provisions of a collective bargaining agreement but the job was given to a less qualified, less senior female solely because of her sex. He seeks damages and promotion, invoking the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000d, 2000e. The other plaintiff, Local # 2350, Communications Workers of America (CWA Local # 2350), joins, claiming that AT&T has by this action interfered with the Union's ability to represent its members and secure them employment rights under the collective bargaining agreement which AT&T admittedly has disregarded. In defense, AT&T justifies its conduct by pointing to a Consent Judgment containing an affirmative action program which obligates it to favor women regardless of seniority to eliminate past sex discrimination. The central legal issue accordingly presented on cross-motions for summary judgment now before the Court, which have been fully briefed and argued, is whether the Consent Judgment provides AT&T with a complete defense to plaintiffs' claims or whether, in spite of its conceded reliance on the Consent Judgment, AT&T must respond in damages. For reasons set forth more fully herein, the Court grants partial summary judgment to plaintiff McAleer and dismisses for lack of jurisdiction the claims made by CWA Local # 2350.

It is essential to an understanding of McAleer's claim that the Court first review the nature of the proceedings which led to the Consent Judgment on which AT&T relies. The Consent Judgment was entered in a nationwide civil rights suit initiated by agencies of the Federal Government in the Eastern District of Pennsylvania, *EEOC v. American Telephone & Telegraph Co.,* 365 F.Supp. 1105 (E.D.Pa.1973), *aff'd in part,* 506 F.2d 735 (3d Cir. 1974). For the text of the Consent Decree, see 1 CCH Emp.Prac. Guide ¶ 1860 at 1533–3 to 1533–14 (1973). The suit followed an adversary hearing conducted by the Federal Communications Commission "which extended over a year, involved approximately 60 days of hearings, the testimony of about 150 witnesses, the introduction into evidence of over 200 exhibits, and a record of about 8,100 pages," 365 F.Supp. at 1114, and, according to the representations of defendant's counsel at oral argument in the present case, the record of the FCC proceeding was before Judge Higginbotham in the Philadelphia litigation. Neither plaintiff McAleer nor CWA Local # 2350 was a party in that suit, nor were they invited to participate in any way.

After the filing of the Philadelphia complaint and AT&T's contemporaneous answer, and following an immediate hearing, the Court received from the parties and approved a Consent Decree and accompanying Memorandum of Agreement which had been entered into by the governmental plaintiffs and AT&T after protracted negotiation. This settlement was characterized by Judge Higginbotham as "the largest and most impressive civil rights settlement in the history of this nation," 365 F.Supp. at 1108. Although there was no admission by AT&T or finding by the Court that any of the federal statutes cited in the complaint had been violated, 365 F.Supp. at 1118, AT&T did agree to establish an affirmative action program with goals and timetables to improve the employment situation for women and minorities previously underutilized within the Company's employee population. Integral to the affirmative action program was a so-called "seniority override" or "affirmative action override" provision which in effect required AT&T to depart from the promotion criteria specified

in the collective bargaining agreement that had in the past governed employee advancement. Prior to the Consent Decree, the contractual standard for promotion among nonmanagement employees called for the selection of the best qualified employee and for consideration of net credited service (seniority), so that when the qualifications of competing employees were substantially equal, net credited service was decisive. "Affirmative action override" requires AT&T to disregard this standard and choose from among basically qualified female or minority applicants if necessary to meet the goals and timetables of the Consent Decree and if other affirmative efforts fail to provide sufficient female or minority candidates for promotion who are the best qualified or most senior.* It was pursuant to this provision that a woman was promoted in place of plaintiff McAleer.

Notwithstanding the impact of "affirmative action override" on labor contracts, which was deemed "essential," 365 F.Supp. at 1111, the parties and the Court were aware of the interests of the unions, and the Consent Decree provided in pertinent part:

> This Decree shall not be interpreted as requiring the abandonment of any provisions in any Bell Company's collective bargaining agreement(s) except as required to maintain compliance with Federal law, Executive Orders and regulations promulgated pursuant thereto pertaining to discrimination in employment. All of the Bell Companies' obligations in this Decree are required for compliance with Federal law; provided, however, that nothing in this Decree is intended to restrict the right of the Bell Companies and the collective bargaining representatives of their employees to negotiate alternatives to the provisions of this Decree which would also be in compliance with Federal law.

> .     .     .     .     .

Each Bell Company shall notify all appropriate collective bargaining representatives of the terms of this Decree and of its willingness to negotiate in good faith concerning these terms. 365 F.Supp. 1118, 1128–29.

Indeed, Judge Higginbotham noted that "[t]hroughout the Consent Decree exceptions and qualifications were additionally extended to the collective bargaining representatives so that whenever possible the contractual integrity of existing collective bargaining agreements was maintained," 365 F.Supp. at 1118–19 n. 21. Thus, for example, the order of layoff and recall of employees is unaffected by "affirmative action override" and continues to be controlled by the collective bargaining agreement, *id.*

This entire process occurred without the participation of Communications Workers of America (CWA), the certified collective bargaining representative of approximately 600,000 nonmanagement employees at AT&T and the parent union with which plaintiff Local # 2350 is affiliated. Although it was consistently given notice in the Philadelphia case of the efforts to reach a settlement, and although it was "begged .   .   . to negotiate and litigate" in that proceeding, 365 F.Supp. at 1110, CWA persistently and repeatedly refused to become involved. CWA's action in this regard was "willful and by choice," 365 F.Supp. at 1109. Nevertheless, after the Consent Decree was approved by the Court, CWA filed a motion to intervene as a plaintiff and to deny enforcement of the Consent Decree until it could reach an independent agreement with AT&T on issues concerning wages, hours and conditions of employment. While treating this motion as timely Judge Higginbotham denied the motion to intervene as a plaintiff (except in one particular that is not relèvant here), 365 F.Supp. 1105 (E.D. Pa.1973), and this decision was affirmed,

---

* During the calendar year 1974 "affirmative action override" resulted in only seven promotions out of a total of 171 nonmanagement promotions in the AT&T Long Lines Department's Eastern Area (West Virginia, Virginia, Maryland, District of Columbia, Pennsylvania, and Delaware). The other 164 promotions occurred in conformity with the collective bargaining agreement. Affidavit of John R. Smart, ¶ 5.

506 F.2d 735 (3d Cir. 1974). However, the United States Court of Appeals for the Third Circuit directed that CWA be allowed to intervene as a defendant because of its

> interest in the provisions of its collective bargaining agreements with AT&T which may well be modified or invalidated by the memorandum of agreement and consent decree of January 18, 1973 made in its absence and, equally clearly, its continuing ability to protest and enforce these contract provisions will be impaired or impeded by the consent decree. It is, therefore, entitled to seek their lawful modification by intervention as a party defendant in the action, if it so desires. 506 F.2d at 741–42.

This Court was informed during oral argument by counsel for defendant that CWA has in fact intervened and that Judge Higginbotham presently has before him and has taken under advisement the question of modification of the Consent Decree because it conflicts with the collective bargaining agreement, *compare Jersey Central Power & Light Co. v. International Brotherhood of Electrical Workers,* 508 F.2d 687 (3d Cir. 1975), *vacated,* —— U.S. ——, 96 S.Ct. 2196, 48 L.Ed.2d 812, 44 U.S.L.W. 3669 (1976).

■ Plaintiffs have devoted a considerable portion of their papers and oral argument before this Court to the question of the legality of preferences and quotas in an affirmative action plan such as those contained in the Philadelphia Consent Decree, at least where there has been no admission or judicial finding of past discrimination. This is a difficult legal and troubling social issue that has recently been addressed but not yet resolved by the courts, *see, e. g., EEOC v. Local 638,* 532 F.2d 821, 11 EPD ¶ 10,757 (2d Cir. 1976); *Acha v. Beame,* 531 F.2d 648, 11 EPD ¶ 10,740 (2d Cir. 1976); *Chance v. Board of Examiners,* 534 F.2d 993, 11 EPD ¶ 10,633 (2d Cir. 1976); *Kirkland v. New York State Department of Correctional Services,* 520 F.2d 420 (2d Cir. 1975), *rehearing denied,* 531 F.2d 5 (2d Cir. 1975); *Patterson v. Newspaper & Mail Deliverers' Union of New York and Vicinity,* 514 F.2d 767 (2d Cir. 1975); *Rios v. Enter-*

*prise Association Steamfitters, Local 638,* 501 F.2d 622 (2d Cir. 1974); *Bridgeport Guardians, Inc. v. Members of the Bridgeport Civil Service Commission,* 482 F.2d 1333 (2d Cir. 1973), *subsequent appeal,* 497 F.2d 1113 (2d Cir. 1974), *cert. denied,* 421 U.S. 991, 95 S.Ct. 1997, 44 L.Ed.2d 481 (1975). However, the Court finds that it need not, and indeed cannot, decide this matter. Plaintiffs' contention is plainly a collateral attack going to the fundamental premise of the Philadelphia Consent Decree, and as such cannot be considered by this Court. The Consent Decree is a final judgment of the United States District Court for the Eastern District of Pennsylvania and is not subject to review or modification in any other court. *See Oburn v. Shapp,* 70 F.R.D. 549 (E.D.Pa.1976) (Green, J.), *subsequent to* 521 F.2d 142, 149 n. 17 (3d Cir. 1975); *Black and White Children of the Pontiac School System v. School District of Pontiac,* 464 F.2d 1030 (6th Cir. 1972); *Construction Industry Combined Committee v. International Union of Operating Engineers,* 67 F.R.D. 664 (E.D.Mo.1975). A contrary rule would be an aspersion on the integrity of the judicial process and productive of little but the mischief of possibly inconsistent standards and interpretations. The Consent Decree expressly provides for the continuing jurisdiction of the Federal Court in Philadelphia and, without in any way determining the rights of plaintiffs to intervene in that forum, this Court has no jurisdiction to pass upon the validity of the Consent Decree or amend its terms.

■ Different considerations come to the fore on the claim of sex discrimination. It is undisputed that defendant relied upon and properly applied the Consent Decree and attendant affirmative action program. Plaintiff McAleer thus stands as an innocent employee who had earned promotion but was disadvantaged when AT&T rejected his application in order to rectify its past discrimination against women. While factually related to the Philadelphia proceeding, this claim does not in any way impugn or collaterally attack the judgment in that case. Rather, it asserts a cause of action for sex discrimination within the Civil

Rights Act of 1964 and this Court clearly has jurisdiction to decide the issue. It is unnecessary to elaborate on the obvious fact that the Consent Decree expressly did not and could not have conclusively determined the rights of nonparties such as plaintiff McAleer (see Decree, Part B, II A & B). Moreover, to require AT&T employees from all over the country to litigate such claims in Philadelphia would as a practical matter nullify their Title VII rights.

It is undisputed that plaintiff McAleer would have been promoted but for his gender. This is a classic case of sex discrimination within the meaning of the Act, 42 U.S.C. § 2000e-2(a)(2). That much is clear. What is more difficult is the issue of defenses or justifications available to AT&T and the question of appropriate relief under the circumstances revealed by this record. McAleer seeks both promotion and damages. The Court holds that he is entitled only to the latter.

■ The Supreme Court recently has had occasion to consider a situation similar to that of plaintiff McAleer. In *Franks v. Bowman Transportation Company, Inc.*, 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444, 44 U.S.L.W. 4356 (1976), the Court held that pursuant to Title VII an eligible and presently qualified candidate who was a victim of prior discrimination could, and indeed generally should, receive a "scarce" benefit given to only a single individual, such as a promotion to a particular position, even at the expense of other, innocent employees. The woman who was promoted in the instant case is certainly within the protected class under the Consent Decree which, as already indicated, this Court will not reconsider. And, while the Philadelphia settlement contained no admission or finding of discrimination by AT&T, approval of the Decree by Judge Higginbotham, in light of the record therein, clearly indicates that, as defendant's counsel forthrightly conceded at oral argument here, AT&T had not been in compliance with federal law; as Judge Higginbotham himself has observed subsequent to the issuance of the Consent Decree:

Moreover, while there may have been some unilateral revisions of [the collective bargaining agreements as a result of the Decree], the changes were *essential to rectify violations by AT&T* of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 et seq.; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as amended; and Executive Order 11246, 30 Fed.Reg. 12319, as amended. 365 F.Supp. at 1111 (emphasis added).

*Franks* thus establishes that McAleer is not entitled to the remedy of promotion to the particular job in question here; indeed, to award such relief might well perpetuate and prolong the effects of the discrimination that the Philadelphia Consent Decree was designed to eliminate.

On the other hand, the Supreme Court in *Franks* did refer to the possibility of compensating with monetary damages innocent employees who are adversely affected by the employer's corrective action, 424 U.S. at 777, 96 S.Ct. at 1270, 47 L.Ed.2d 444, 44 U.S.L.W. at 4365 n. 38, but, as expressly noted by the Chief Justice, 424 U.S. at 780, 96 S. Ct. at 1272, 47 L.Ed.2d 444, 44 U.S.L.W. at 4366 (Burger, C. J., concurring in part and dissenting in part), it did not decide the issue. However, certain precepts do emerge from that case which provide guidance. Apparently common to the various opinions in *Franks* was a recognition of the need to share among the respective parties the burden of eradicating past discrimination and achieving equality of employment opportunities. In particular, it was agreed that courts should attempt to protect innocent employees by placing this burden on the wrongdoing employer whenever possible. *See*, 424 U.S. at 776-777, 96 S.Ct. at 1270, 47 L.Ed.2d 444, 44 U.S.L.W. at 4365 (majority opinion); *id.* 424 U.S. at 780, 96 S.Ct. at 1272, 47 L.Ed.2d 444, 44 U.S.L.W. at 4366 (Burger, C. J., concurring in part and dissenting in part); *id.* 424 U.S. at 786, 96 S.Ct. at 1275, 47 L.Ed.2d 444, 44 U.S.L.W. at 4368 (Powell, J., joined by Rehnquist, J., concurring in part and dissenting in part). This Court, agreeing with these sentiments, sees no reason why

in equitably distributing the burden among the concerned parties the onus should be shifted from the employer responsible for the discrimination to the blameless third-party employee any more than is, as a practical matter, unavoidable.

■ More general principles of law also support plaintiff McAleer's right to damages. It is true that AT&T was following the terms of the Consent Decree, and ordinarily one who acts pursuant to a judicial order or other lawful process is protected from liability arising from the act, e. g., *Coca-Cola Co. v. FTC,* 475 F.2d 299, 304 n. 6 (5th Cir. 1973), *cert. denied,* 414 U.S. 877, 94 S.Ct. 121, 38 L.Ed.2d 122 (1973); *PepsiCo, Inc. v. FTC,* 472 F.2d 179, 187–89 (2d Cir. 1972), *cert. denied,* 414 U.S. 876, 94 S.Ct. 44, 38 L.Ed.2d 122 (1973); *cf. United States v. Mancuso,* 139 F.2d 90 (3d Cir. 1943). But such protection does not exist where the judicial order was necessitated by the wrongful conduct of the party sought to be held liable, e. g., *Lowenschuss v. Kane,* 520 F.2d 255, 265–67 (2d Cir. 1975). *See generally* 6 *A. Corbin, Contracts* § 1346 (1962); 6 *S. Williston, Treatise on the Law of Contracts* § 1939 (1938, Supp.1974); *Restatement of Contracts* § 458 & illustration 5 (1932). Here, the Consent Decree on which defendant relies was necessary only because of AT&T's prior sex discrimination. Under these circumstances the Decree provides no defense against the claims of a faultless employee such as McAleer.

Accordingly, the Court holds that plaintiff McAleer has a cause of action for monetary damages under Title VII. Of course, only that employee who would have been promoted here but for the affirmative action program is entitled to recover, but it is undisputed in this case that McAleer is that individual. Thus, since there are no genuine issues of material fact and he is entitled to partial judgment as a matter of law, partial summary judgment on the issue of liability will be entered for plaintiff McAleer.

The Court has made no attempt at this stage to resolve the appropriate measure or amount of the damages to be awarded here.

The Court recognizes that it may well be impossible through a monetary award for economic losses to compensate plaintiff fully for the injury he has incurred. On the other hand, since McAleer had no responsibility for AT&T's past sex discrimination, it is AT&T rather than McAleer who should bear the principal burden of rectifying the company's previous failure to comply with the Civil Rights Act of 1964. An affirmative award of some damages on a "rough justice" basis is therefore required and will constitute an added cost which the stockholders of AT&T must bear, *see NAACP v. FPC,* —— U.S. ——, 96 S.Ct. 1806, 48 L.Ed.2d 284, 44 U.S.L.W. 4659 (1976).

■ In contrast, CWA Local # 2350 has no cause of action, either directly or derivatively, for sex discrimination. It may have a legitimate charge of an unfair labor practice against AT&T, *but see* 365 F.Supp. at 1109, 1129–30, but this is within the exclusive jurisdiction of the National Labor Relations Board. Although its complaint is not so drafted, the Union may also have a damage action under § 301 of the Taft-Hartley Act, 29 U.S.C. § 185, for breach of the collective bargaining contract. *See generally, e. g., Smith v. Evening News Ass'n,* 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962); *Amazon Cotton Mill Co. v. Textile Workers Union,* 167 F.2d 183 (4th Cir. 1948); *Local Union No. 59 of Sheet Metal Workers International Association v. J. E. Workman, Inc.,* 343 F.Supp. 480 (D.Del. 1972). However, it is conceded that the grievance and arbitration procedures specified in that contract have not been exhausted (Contract between AT&T and CWA, Articles 16, 17, 18.21 (July 18, 1974), and thus even if the complaint were amended this Court would have no jurisdiction to consider the issue, *see, e. g., American Association of Street, Electric Railway and Motor Coach Employees of America v. Lockridge,* 403 U.S. 274, 298–301, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971); *Vaca v. Sipes,* 386 U.S. 171, 183–88, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). This failure to exhaust contractual remedies does not affect plaintiff McAleer's claim under Title VII, since the statute

creates a right in addition to and independent of the collective bargaining agreement, *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974).

For the foregoing reasons, plaintiff McAleer's motion for summary judgment is hereby granted in part on the issue of liability. The motion of plaintiff CWA Local # 2350 for summary judgment is denied. Defendant's motion for summary judgment is granted as to plaintiff CWA Local # 2350, so that Count II of the Complaint shall be and hereby is dismissed, and denied in all other respects. A status conference to discuss further proceedings, if any, on the measure and amount of damages for plaintiff McAleer is scheduled for June 22, 1976, at 4:00 p. m.

SO ORDERED.