Timothy F. DENNISON, et al.,
Intervenors-Appellees,

v.

CITY OF LOS ANGELES DEPART-
MENT OF WATER AND POWER,
et al., Defendants-Appellees.

INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS, LOCAL NO.
18, on behalf of its members, et al.,
Plaintiffs-Appellants,

v.

CITY OF LOS ANGELES DEPART-
MENT OF WATER AND POWER,
et al., Defendants-Appellees.

No. 80–5061.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 5, 1981.

Decided Oct. 5, 1981.

Rehearing Denied Dec. 2, 1981.

Laurence D. Steinsapir, Schwartz, Stein-
sapir, Dohrmann & Krepack, Los Angeles,
Cal., for Intern. Broth. of Electrical Work-
ers.

A. Thomas Hunt, Los Angeles, Cal., ar-
gued for defendants-appellees; Terso R.
Rosales, Los Angeles, Cal., on brief.

Before CHAMBERS and CANBY, Circuit
Judges, and BATTIN, District Judge *.

CANBY, Circuit Judge.

The International Brotherhood of Electri-
cal Workers (IBEW) on behalf of non-mi-
nority employees of the Los Angeles De-
partment of Water and Power (Depart-
ment) appeals the district court's grant of
summary judgment to the Department and

* The Honorable James Battin, United States Dis-
trict Judge, for the District of Montana, sitting
by designation.

Dennison. The union contends that the court erred in refusing to compensate non-minority employees denied promotions as a result of an affirmative action program established pursuant to a consent decree between the Department and Dennison. The district court held that the IBEW action was barred as a collateral attack on the consent decree. Alternatively, it concluded that even if the suit was not a collateral attack, the consent decree was proper and the employees were not entitled to any compensation. We affirm the district court's decision on the ground that the present action is an impermissible collateral attack.

In 1973, Dennison, on behalf of himself and other similarly situated minority employees, brought suit against the Department. He alleged that its hiring and promotion policies discriminated on the basis of race and national origin. In February 1977, the parties settled the class action by entering into a consent decree. Part of the decree provides that 50% of all initial hirings and promotions will be awarded to qualified black and hispanic class members until all identifiable past applicants have had the opportunity to be hired or promoted at least once. The affirmative action provisions are to remain in effect until February 1987.

On March 21, 1977, the district court conducted a Fairness Hearing to allow persons who had previously submitted written objections to the consent decree the opportunity to present orally their objections to the court. Written notice of the hearing was sent to all employees. The IBEW appeared at the hearing and, among other objections, criticized the adverse impact of the consent decree on non-minority employees. On March 24, 1977, the district court approved the consent decree.

In October 1977, Kennedy and Balsz, two non-minority employees, took promotion examinations. As a result of the affirmative action program required by the Dennison consent decree, they were denied promotions. Both filed charges of discrimination with the Equal Employment Opportunity Commission and in January 1979 each re-ceived a Notice of Right to Sue. In March, 1979, Kennedy, Balsz and the IBEW initiated this suit.

■■ It is settled that a consent decree is not subject to collateral attack, *Culbreath v. Dukakis*, 630 F.2d 15, 22 (1st Cir. 1980); *O'Burn v. Shapp*, 70 F.R.D. 549 (E.D.Pa. 1976) *aff'd without opinion* 546 F.2d 417 (3d Cir. 1976) *cert. denied*, 430 U.S. 968, 97 S.Ct. 1650, 52 L.Ed.2d 359 (1977); *Prate v. Freedman*, 430 F.Supp. 1373 (W.D.N.Y.) *aff'd without opinion* 573 F.2d 1294 (2d Cir. 1977) *cert. denied* 436 U.S. 922, 98 S.Ct. 2274, 56 L.Ed.2d 765 (1978). *See Black and White Children v. School District*, 464 F.2d 1030 (6th Cir. 1972) (per curiam); *Burns v. Board of School Commissioners*, 437 F.2d 1143 (7th Cir. 1971) (per curiam). IBEW contends, however, that it is not contesting the validity of the decree; rather it seeks monetary relief for those non-minority employees adversely affected by the affirmative action provision. The district court properly rejected this argument as substantively, albeit not formally, an impermissible collateral attack.

Compensatory relief is generally intended to make whole the plaintiff for any losses he may have incurred as a result of the defendant's wrongdoing. Thus implicit in the IBEW's prayer for relief is the contention that the operation of the consent degree itself constitutes a compensable wrong. So to hold in this proceeding would be to permit a collateral attack on the consent decree.

Awarding compensatory relief to the non-minority employees would impose conflicting or inconsistent obligations on the Department. Each time the Department attempted to comply with the affirmative action program by promoting a minority employee, it would have to give an equivalent amount of compensation to a non-minority employee who would have been promoted but for the consent decree. That extra compensation would drastically increase the cost of each promotion and would burden the Department for complying with the consent decree. The decree established who was entitled to promotion, and the present

action indirectly seeks to confer the benefits of promotion on others. The relief sought in the present action is accordingly in conflict with the decree.

■ Moreover, we feel that permitting the IBEW to sue for compensation would be inimical to the policy underlying Title VII of promoting settlements. *Cf. Alexander v. Gardener-Denver Corp.*, 415 U.S. 36, 44, 94 S.Ct. 1011, 1017, 39 L.Ed.2d 147 (1974); *United States v. City of Miami*, 614 F.2d 1322, 1331–32 (5th Cir. 1980) (citing cases). The Department would in effect be forced to walk a tightrope. If it refused to enter into the consent decree, it would be potentially liable to the Dennison class plaintiffs. If it did enter into the agreement, it would be subject to suits for compensation by non-minority employees. *Cf. United Steelworkers v. Weber*, 443 U.S. 193, 209, 99 S.Ct. 2721, 2730, 61 L.Ed.2d 480 (1979) (Blackmun J. concurring); *Weber v. Kaiser Aluminum & Chemical Corp.*, 563 F.2d 216, 230 (5th Cir. 1978) (dissenting opinion).[1]

■ Finally, we reject IBEW's contention that it was not notified of the Dennison suit and the impending consent decree until shortly before the Fairness Hearing and that it was therefore precluded from any direct attack upon the decree. The

union had sufficient opportunity to intervene in the Dennison suit prior to the entry of the consent decree.[2] *See Alaniz v. Tillie Lewis Foods*, 572 F.2d 657 (9th Cir. 1978) (per curiam) *cert. denied*, 439 U.S. 837, 99 S.Ct. 123, 58 L.Ed.2d 134 (1978). Moreover, the Fairness Hearing held before the consent decree was formally adopted adequately afforded the union an opportunity to present to the court its view of the adverse impact of the decree on non-minority employees.

Because the IBEW's suit is barred as an impermissible collateral attack on the consent decree, we need not consider the merits of awarding damages to non-minority employees adversely affected by the adoption of an affirmative action plan. The district court's grant of summary judgment is affirmed.

1. We accordingly reject the view of the district court in *McAleer v. American Telephone & Telegraph Co.*, 416 F.Supp. 435 (D.D.C.1976), that an employee allegedly denied a promotion because his employer was complying with a consent decree is entitled to damages. That court held that denying relief to the employee would unfairly burden him with the consequences of a judicial decree necessitated by the employer's wrongdoing. For reasons stated previously in this opinion, we find the district court's reasoning unpersuasive. *See also Telephone Workers v. New Jersey Bell Telephone Co.*, 450 F.Supp. 284, 298 (D.N.J.1977), *aff'd* 584 F.2d 31 (3d Cir. 1978).

2. *Harmon v. San Diego County*, 477 F.Supp. 1084 (S.D.Cal.1979) relied upon by appellants is inapposite. In *Harmon*, plaintiff, a white male who was twice passed over for a civil service position despite being best qualified, brought suit under Title VII. The County asserted that it had acted pursuant to a consent decree which prohibited it from discriminating on the basis of race, sex or national origin and that Harmon's suit was a collateral attack on the

decree. The district court gave two reasons for rejecting the County's argument. First, the consent decree did not implement any affirmative action program. Thus, had the County selected Harmon, it would not have been in violation of the consent decree. Second, Harmon had twice attempted to intervene in the consent decree action, but his efforts were strenuously and successfully opposed by the County. 477 F.Supp. at 1091.

Neither rationale is applicable to the present case. As previously discussed, permitting non-minority employees compensatory relief would impose conflicting or inconsistent obligations on the Department. It would also undermine the policy of promoting settlements in Title VII suits.

The second reason mentioned by the district court in *Harmon* is also unavailing. Unlike Harmon who was twice prevented from intervening in the consent decree litigation, IBEW never attempted to intervene in the Dennison suit.