[Civ. No. 45395. First Dist., Div. One. Mar. 12, 1982.]

JAMES HAYWORTH et al., Plaintiffs and Appellants, v.
CITY OF OAKLAND et al., Defendants and Respondents.

724

## Counsel

Duane W. Reno and Davis, Cowell & Bowe for Plaintiffs and Appellants.

Jeffrey N. Haney, Acting City Attorney, Susan Watkins and Theodore R. Lakey, Assistant City Attorneys, for Defendants and Respondents.

## Opinion

**GRODIN, J.**—In 1975, a group of black firefighters brought suit against various officials of the City of Oakland (City) seeking relief for what they claimed were racially discriminatory practices by the City's fire department in hiring and promotion. The trial court, finding in favor of plaintiffs on their claim of past racial discrimination, issued a writ of mandate on December 9, 1975, ordering, among other things, that respondents "[f]or the next five (5) years, promote at least one racial minority for each five Caucasian persons promoted to the same classification."

On appeal, the trial court's judgment was reversed. (*Hull v. Cason* (1981) 114 Cal.App.3d 344 [171 Cal.Rptr. 14].) The "quota" provisions of the judgment were found to "unlawfully discriminate against

Caucasian persons on account of their race," in contravention of the Fourteenth Amendment and the Civil Rights Act of 1964. (*Id.*, at p. 370.) The basis of that holding was that "there was neither evidence, nor contention, that any of the named plaintiffs, or of the class of minority persons represented by them, was a victim of the fire department's earlier discrimination." (*Id.*, at p. 363.) That decision has become final, and constitutes the law of the case.

While the appeal was pending, a number of vacancies occurred in the position of fire captain. Normally, these vacancies would be filled from an eligibility list based on oral and written examinations. On June 2, 1975, such an eligibility list was established for the position of captain, and by April 1977 the first 12 persons on that list had been promoted to that position. These 12 included 10 whites and 2 minorities, in compliance with the ratio established by the trial court's order. After these promotions had been made, there were no more minorities on the list. Although the list did not expire until June 2, 1977, the City decided not to and did not promote any further persons from the list, prior to the expiration of the list or at all. Instead, the fire department filled vacant positions with temporary appointments and overtime assignments.[1]

On June 21, 1977, James Hayworth and Ronald Flashberger, then employed as lieutenants in the Oakland Fire Department, and Local 55, International Association of Fire Fighters, AFL-CIO (the recognized employee organization representing uniformed fire fighters in the department), brought this proceeding against the City and various of its officials, complaining of the department's failure to fill vacancies from the eligibility list. They claimed that the unilateral change in practice constituted a violation of the City's duty to meet and confer under the Meyers-Milias-Brown Act (Gov. Code, § 3500 et seq.); that the City's refusal to promote Hayworth and Flashberger discriminated against them as Caucasians in violation of the equal protection provisions of the state and federal Constitutions and the Civil Rights Act of 1866 (42 U.S.C. § 1981); and that the department's decision not to hire from the list of remaining eligibles violated applicable rules of the civil service board. Alleging that they were on the eligibility list and would have been appointed to the position of captain but for the department's policy complained of, Hayworth and Flashberger sought a writ of mandate compelling the City to appoint them to that position retroactively, with

---

[1]These facts come from undisputed findings of fact made by the trial court in the instant case.

back pay and benefits. Additionally, they sought compensatory damages for emotional distress, and exemplary damages.

After a trial on the merits, the trial court on June 13, 1978, entered judgment denying the writ of mandate and ordering that plaintiffs take nothing by their complaint. The court found that while it had been a long-standing practice for the City to fill authorized vacancies which occurred through "last-minute" retirements (i.e., retirements occurring immediately prior to the expiration of civil service eligibility lists) from the existing eligibility lists, the City's decision not to follow that practice was due to the City's desire to comply with the order in *Hull* v. *Cason, supra*, 114 Cal.App.3d 344, imposing the one-for-five promotion ratio. Reasoning that the strictures imposed by that order were not stayed by the then pending appeal, the court concluded that respondents were bound as a matter of law to comply, and that consequently, their compliance could not give rise to a cause of action on any of the grounds asserted. Plaintiffs Hayworth and Flashberger have appealed from that judgment.

## I.

Critical to the trial court's judgment was its determination that the writ of mandate in *Hull* v. *Cason, supra*, was not stayed by the then pending appeal. We have concluded that the trial court erred in that determination.

Generally, "the perfecting of an appeal stays proceedings in the trial court upon the judgment or order appealed from or upon the matters embraced therein or affected thereby, including enforcement of the judgment or order." (Code Civ. Proc., § 916.) This rule is applicable to proceedings on a writ of mandate. (See *Building Code Action* v. *Energy Resources Conservation & Dev. Com.* (1979) 88 Cal.App.3d 913, 921-922 [152 Cal.Rptr. 214].) In apparent recognition of that principle, Code of Civil Procedure section 1110b provides that where appeal is taken from an order or judgment granting a writ of mandate, "the court granting the writ, or the appellate court, may direct that the appeal shall not operate as a stay of execution" upon a showing of irreparable damage if the execution is stayed. And, while the rule of automatic stay does not apply to an injunction which is "prohibitory" in nature, rather than "mandatory" (*Paramount Pictures Corp.* v. *Davis* (1964) 228 Cal.App.2d 827, 835 [39 Cal.Rptr. 791]), an injunction is considered to

be mandatory where it requires affirmative action and changes the status quo. (*Ibid.*)

The promotion ratio imposed by the order in *Hull* v. *Cason, supra*, 114 Cal.App.3d 344, cannot reasonably be characterized as merely preserving the status quo; it changed the existing civil service promotion procedures and required different, positive, action. Thus, even if the form of the order as a writ of mandamus be disregarded, the rule of automatic stay was applicable.

Any doubt on this point was eliminated on June 7, 1979, when the Supreme Court denied Local 55's petition for a writ of supersedeas and request for stay of the *Hull* v. *Cason* order "on the ground that the trial court order is automatically stayed by virtue of the appeal. (Code of Civil Procedure, § 1110b)." The denial was expressly "without prejudice to the right of plaintiffs or the City of Oakland to petition this court pursuant to section 1110b for an order that the appeal herein shall not operate as a stay of execution." No such petition was filed.

## II.

Respondents argue that even if the trial court's ruling on the automatic stay issue was erroneous, the judgment of dismissal should, nevertheless be affirmed on other, independent, grounds, which may be summarized as estoppel, failure to pursue grievance procedures, and lack of discriminatory motive.[2] We proceed to consider these grounds seriatim.

■ 1. *Estoppel.* Respondents argue: "Local 55 having agreed on behalf of its members that the trial court's direction in *Hull* v. *Cason* would be followed, petitioners are estopped from repudiating that com-

[2]Respondents have not contended, either here or in the trial court, that plaintiffs are barred from asserting their present claim in a separate action by the fact that similar issues were presented by intervening white firefighters in *Hull* v. *Cason*. The defense of splitting a cause of action may be raised by the defense of res judicata or a plea in abatement. The defense of res judicata was not raised, and was not available since *Hull* v. *Cason* was unresolved at the appellate court at the time this action was filed. (See 4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 163, p. 3307.) The City did not assert a plea of abatement on the ground that another action was pending, and that defense is generally considered waived if not pled. (3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 33, p. 1717, § 821, p. 2429.) Moreover, the defense of another action pending is not available unless the parties, issues, and causes of action are the same, and that is not the situation here. (Cf. *McAleer* v. *American Tel. & Tel. Co.* (D.D.C. 1976) 416 F.Supp. 435.)

mitment." Respondents refer, in this connection, to an observation by the trial court in its memorandum of decision that Local 55 "has not, prior to discussions leading to this action, resisted the defendants' position respecting its obligation to abide by the judgment in *Hull* v. *Cason*," and to evidence allegedly showing union acquiescence in the City's compliance with the *Hull* v. *Cason* order.

It does not appear from the record that respondents pleaded the issue of estoppel as an affirmative defense or requested findings of fact on that issue. Hence, under the general rule of appellate review that questions not raised in the trial court will not be considered on appeal, respondents may not now seek affirmance on that ground. (*Williams* v. *Galloway* (1962) 211 Cal.App.2d 302, 305 [27 Cal.Rptr. 438]; *Roam* v. *Koop* (1974) 41 Cal.App.3d 1035, 1044 [116 Cal.Rptr. 539].) Moreover, the evidence with respect to estoppel is, at best, conflicting and would hardly support a finding of estoppel as a matter of law. While the union's alleged acquiescence could have bearing upon the question of remedy, that is a matter for the trial court to determine upon remand.

2. *Failure to Pursue Grievance Procedures.* ■ Respondents contend "appellants were barred by their failure to pursue the grievance procedure." The reference is to a grievance and arbitration procedure contained in a memorandum of understanding between the City and Local 55. The procedure, which applies to "any dispute involving the interpretation or application of this Memorandum of Understanding . . . or disputes concerning or arising out of the existing terms and conditions of employment," calls for binding arbitration of disputes not earlier resolved in the grievance procedure.

The contention fails for two independent reasons. First, while it was raised as an affirmative defense in the City's response to the petition for writ of mandate, the City took no further steps to stay the proceedings or to obtain dismissal on that ground, instead permitting the matter to go to trial and judgment. A defendant sued over a dispute which he contends is subject to arbitration may "elect to demur or move for summary judgment on the ground that the plaintiff has failed to exhaust arbitration remedies [or] move for a stay of proceedings pending arbitration if defendant also moves to compel arbitration." (*Charles J. Rounds Co.* v. *Joint Council of Teamsters No. 42* (1971) 4 Cal.3d 888, 899 [95 Cal.Rptr. 53, 484 P.2d 1397].) Such a defendant may not, however, participate in litigation in such a manner as to constitute

"testing the water before taking the swim." (*McConnell* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1980) 105 Cal.App.3d 946, 951 [164 Cal.Rptr. 751].) The Supreme Court, in a case in which the plaintiff sought to abandon his lawsuit and pursue arbitration, held that "the mere filing of a lawsuit does not waive contractual arbitration rights," and that "it is the judicial *litigation* of the merits of arbitrable issues which waives a party's right to arbitration." (*Doers* v. *Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 188 [151 Cal.Rptr. 837, 588 P.2d 1261].) It left open the "possibility that a waiver could occur prior to a judgment on the merits if prejudice could be demonstrated." (*Id.*, at p. 188, fn. 3.) Here, there can be no doubt that "judicial litigation" occurred.

The City's contention in any event lacks substantive merit. The memorandum of understanding prohibits discrimination against employees because of race or color, and so we assume that appellants' claim of discrimination would have been cognizable under the agreement. It does not follow, however, that they were bound to pursue the contractual procedure as a prerequisite to judicial litigation of their constitutional and statutory claims.

In *Alexander* v. *Gardner-Denver Co.* (1974) 415 U.S. 36 [39 L.Ed.2d 147, 94 S.Ct. 1011], the Supreme Court held that an employee who claims racial discrimination at the hands of his employer may sue in court under title VII even though he has invoked the arbitration machinery of the labor agreement and received an adverse award. In arriving at that conclusion, the court emphasized "[t]he distinctly separate nature of these contractual and statutory rights" (*id.*, at p. 50 [39 L.Ed.2d at p. 159]), and observed: "Arbitral procedures, while well suited to the resolution of contractual disputes, makes arbitration a comparatively inappropriate forum for the final resolution of rights created by Title VII." (*Id.*, at p. 56 [39 L.Ed.2d at p. 163].)

Those courts which have considered the question have concluded that contractual remedies afforded by an applicable collective bargaining agreement not be exhausted as a prerequisite to proceedings under title VII (*Bowe* v. *Colgate-Palmolive Company* (S.D.Ind. 1967) 272 F.Supp. 332, affd. in part, revd. on other grounds (7th Cir. 1969) 416 F.2d 711); or under title 42, United States Code section 1981 (*Marlowe* v. *Fisher Body* (6th Cir. 1973) 489 F.2d 1057, 1065-1066; *Waters* v. *Wisconsin Steel Works of Int. Harvester Co.* (7th Cir. 1974) 502 F.2d 1309). This rule seems particularly appropriate where, as here, the dis-

pute concerns broad questions of law and public policy beyond the normal purview of the labor arbitrator.

3. *Lack of Discriminatory Motive.* Respondents argue that "the city presented valid non-discriminatory, non-pretextual reasons for refusing to promote appellants." By this they mean that the City believed it was obligated to comply with the decree in *Hull* v. *Cason, supra,* 114 Cal.App.3d 344, that it had "committed" itself to do so, and was therefore "morally obligated" to obey it. Respondents observe, in that connection that if they made appointments inconsistent with the order, and the order was affirmed on appeal, the City would face substantial problems in recreating the status quo.

While the force of this argument is somewhat diminished by the fact that the *Hull* v. *Cason* order was automatically stayed by the appeal, there is no denying its underlying premise: that a party should not be "punished" for complying with an apparently lawful order of a court. Indeed, in the sensitive arena of race relations, where public policy against discrimination has been expressed in the strongest terms and the necessity for appropriate remedial orders has been recognized by the highest authority (e.g., *Franks* v. *Bowman Transportation Co.* (1976) 424 U.S. 747 [47 L.Ed.2d 444, 96 S.Ct. 1251]), a rule that would encourage delay in complying with court orders valid on their face would be particularly anomalous.

The argument, however, is more appropriately directed toward the nature of the remedy rather than the existence of the legal right. In a somewhat analogous context, federal courts have held that an employer "intentionally" engages in an unlawful employment practice, within the meaning of title VII of the Civil Rights Act of 1964 when he engages in an employment practice deliberately, rather than accidentally, and that he is therefore guilty of violating that act even though he has relied in good faith upon a state statute which mandates the practice complained of. (*Schaeffer* v. *San Diego Yellow Cabs, Inc.* (9th Cir. 1972) 462 F.2d 1002, 1006, and cases cited therein; cf. *Albemarle Paper Co.* v. *Moody* (1975) 422 U.S. 405, 422 [45 L.Ed.2d 280, 299, 95 S.Ct. 2362].) Good faith reliance upon a state statute may, however, be a partial defense to liability on the basis of equitable considerations: "[I]n each case the merits of the plaintiff's claim and the public policy behind it must be balanced against the hardship on a good-faith employer." (*Schaeffer* v. *San Diego Yellow Cabs, Inc., supra,* 462 F.2d at p. 1007.)

Closer to home, federal courts have treated good faith reliance upon affirmative action provisions contained in a consent decree in a similar manner. In *Harmon* v. *San Diego Cty.* (S.D.Cal. 1979) 477 F.Supp. 1084, a white male brought a title VII action against the county, alleging he had been denied employment on the basis of race and sex. The county, in defense, invoked the provisions of a consent decree which it had entered into in litigation in which the United States was a party, and which it interpreted as providing for preferential hiring. The court held that the county misinterpreted the consent decree, but went on to state that even if the consent decree did authorize preferential hiring, that would be "irrelevant" to the existence of a title VII violation claimed by Harmon, who was not a party to that decree. (477 F.Supp. at p. 1091; see also, *McAleer* v. *American Tel. & Tel. Co., supra*, 416 F.Supp. 435, 440.)

Similar reasoning is applicable here. The fact that the City may have complied with the trial court's order in good faith, and without discriminatory motivation, does not relieve it as a matter of law from the conclusion in *Hull* v. *Cason, supra*, 114 Cal.App.3d 344, that its actions discriminated generally against white firefighters in violation of their constitutional and statutory rights.[3] Such good faith compliance would, however, be relevant to the question of remedies available, assuming that entitlement is otherwise demonstrated. Certainly, in the face of good faith compliance, the exemplary damages which appellants sought by their complaint would not be appropriate. Insofar as appellants seek immediate promotion to the position of captain, the interests of innocent black employees who may already have been promoted to that position must also be considered. (Cf. *Teamsters* v. *United States* (1977) 431 U.S. 324, 374-376 [52 L.Ed.2d 396, 439-446, 97 S.Ct. 1843]; *McAleer* v. *American Tel. & Tel. Co., supra*, 416 F.Supp. 435, 439; *Harmon* v. *San Diego Cty., supra*, 477 F.Supp. 1084, 1092.) In that connection, the trial court has broad discretion in fashioning relief. (Cf. *Franks* v. *Bowman Transportation Co., Inc., supra*, 424 U.S. 747, 764 [47 L.Ed.2d 444, 461]; *Sethy* v. *Alameda County Water Dist.* (9th Cir. 1976) 545 F.2d 1157.) Whether or to what extent appellants, themselves assertedly innocent victims of what has been held to constitute unlawful discrimination, should recover back pay based upon

---

[3]The City does not seek to sustain the City's actions on the ground that they are the product of a self-imposed affirmative action program. (*Price* v. *Civil Service Com.* (1980) 26 Cal.3d 257 [161 Cal.Rptr. 475, 604 P.2d 1365].) In light of the majority holding in *Hull* v. *Cason, supra*, that the "quota" system was itself unconstitutional, such an argument would be unavailing in this case. (See also, *Harmon* v. *San Diego Cty., supra*, 477 F.Supp. at p. 1089.)

salary differentials for the period during which they may be found to have been wrongfully denied promotion, involves, under our analysis, equitable considerations subject to initial determination by the trial court.[4] Since the trial court did not reach these issues, reversal is required.

Respondents also contend that they had "valid economic reasons," based upon budgetary considerations, for not promoting appellants. This contention, however, appears to be contrary to the trial court's finding that it was the City's desire to comply with the *Hull* v. *Cason* order which determined its decision to depart from civil service rules and past practice. It has not yet been determined through findings of fact whether both appellants would have been promoted but for the "quota" arrangement complained of, and that initial determination will have to be made. (Cf. *McAleer* v. *American Tel. & Tel. Co., supra*, 416 F.Supp. at p. 440; *Day* v. *Mathews* (D.C.Cir. 1976) 530 F.2d 1083, 1085.)

Reversed and remanded.

Elkington, Acting P. J., and Figone, J.,* concurred.

---

[4] We are reluctant to provide specific guidance on this issue because it has not been briefed or argued, and because its outcome may depend upon facts not yet determined by the trial court or upon considerations not brought to our attention. The authorities provide no specific guidance. In the absence of contravening equitable considerations, back pay would of course be an appropriate remedy. (*Albemarle Paper Co.* v. *Moody, supra*, 422 U.S. at pp. 415-422 [45 L.Ed.2d 280, 295-299].) We note that in the title VII sex discrimination cases in which employers relied in good faith upon state statutes, courts generally have held that damages should not be awarded for the period of time prior to court decisions which made clear that the statutes were preempted by federal law, but that once the employer was placed on notice by such decisions damages were appropriate (e.g., *Schaeffer* v. *San Diego Yellow Cabs, Inc., supra*, 462 F.2d at p. 1006). In *McAleer* v. *American Tel. & Tel. Co., supra*, 416 F.Supp. 435, the court held that an employer's reliance upon a consent decree did not bar relief in compensatory damages to an innocent employee, but its holding in that respect was based on the premise that the consent decree was necessitated by the employer's wrongful conduct. (*Id.*, at p. 440.) In *Harmon* v. *San Diego Cty., supra*, 477 F.Supp. 1084, the county did not contest Harmon's right to an award of back pay, costs, and attorney fees. (*Id.*, at p. 1092.)

*Assigned by the Chairperson of the Judicial Council.