[Civ. No. 45618. First Dist., Div. Two. Dec. 11, 1980.]

FRANCIS P. WALL, Plaintiff and Appellant, v.
JOHN KEVIN DONOVAN, Defendant and Respondent.

**124**

Stephen Adams and Bernard N. Wolf for Plaintiff and Appellant.

John B. Marchant and Sedgwick, Detert, Moran & Arnold for Defendant and Respondent.

**TAYLOR, P. J.**—Husband (F. P. Wall) appeals from an order[1] granting a summary judgment to his former counsel (J. K. Donovan) in an action for malpractice in the marital dissolution proceedings. Husband argues that: 1) he was damaged by his lawyer's failure to raise the domicile issue in the dissolution proceeding, which resulted in the erroneous distribution of one-half of his military pension to his former wife; and 2) the trial court erred in holding that he was collaterally estopped from raising the domicile issue in the malpractice action. For the reasons set forth below, we have concluded that the order must be affirmed.

The record reveals the following pertinent facts: On June 29, 1972, the wife filed a petition for legal separation. On September 5, 1972, husband filed a response requesting dissolution of the marriage. His response admitted that he had been a resident of this state for at least six months and that the wife's characterization of his vested Air Force retirement pension as community property was correct.

After a hearing, the stipulated interlocutory decree entered on December 15, 1972, included a division of the husband's Air Force pension as community property.[2] No appeal was taken from the interlocutory decree. After a hearing, the final decree entered on March 19, 1973, affirmed the division of community property. No appeal was taken. On April 10, 1973, Donovan withdrew as attorney of record in the dissolution proceedings pursuant to Code of Civil Procedure section 285.1.

On September 17, 1973, the husband (represented by his present counsel) filed a motion pursuant to Code of Civil Procedure section 473, to set aside the characterization and division of the community

---

[1]The notice of appeal erroneously designates the order as a judgment.
[2]Paragraph 4e so provided.

property, as set forth in the decree of dissolution, on grounds that he had never been a resident of California.

The court made findings of fact and conclusions of law. In doing so, the court weighed the conflicting declarations of the parties on the issue of the husband's domicile. The court noted that, prior to his petition for dissolution, the husband had obtained a California driver's license and had intended to remain in California because of the availability of programs for his educationally handicapped daughter; that after the separation; the husband retired in California, obtained employment in Novato, and remarried a California resident.[3]

The court then concluded that: 1) the motion was not timely filed as nine months had elapsed after entry of the interlocutory decree; 2) even if the husband were entitled to relief, there was no reasonable likelihood that he could prevail as at all times relevant he had been domiciled in California, and his Air Force pension benefits were properly characterized and divided as community property or quasi-community property; 3) even if the husband was not domiciled in California, he was estopped from contesting the issue of domicile as he originally failed to raise the issue in his response requesting dissolution, and he also had invoked the jurisdiction of the California court in the dissolution proceedings. The court entered its order denying the husband's motion on January 28, 1974. No appeal was taken from that order.

On June 17, 1974, the husband commenced the instant action against Donovan, his former attorney in the dissolution proceedings, alleging malpractice and negligent failure to raise the domicile issue at the time of the dissolution. Subsequently, Donovan filed a motion for summary judgment, alleging that there was no triable issue of fact, as the husband was domiciled in California at all times relevant and also was collaterally estopped from relitigating the issue.

■ Husband contends that collateral estoppel is not applicable here, as the issue of domicile in the dissolution proceeding was a broader one than in the instant case, and in any event, the issue of domicile was not necessary to the dissolution. As indicated above, the disputed factual question of the husband's domicile was initially determined in the uncontested dissolution proceedings and subsequently fully litigated in the contested proceedings on the husband's motion. The doctrine of collat-

---

[3]Husband indicated that he did not register to vote in California, had not paid income tax, maintained bank accounts in Colorado and listed Florida as his home on permanent Air Force records.

eral estoppel means that once an issue is litigated and determined, it is binding in a subsequent action (*Carroll v. Puritan Leasing Co.* (1978) 77 Cal.App.3d 481, 490 [143 Cal.Rptr. 772]).

The husband's argument is based on the alternative findings made by the court in its findings and conclusions on his motion. Husband argues that the alternative findings are inconsistent as applied to the malpractice action. We see no inconsistency. Furthermore, the rule, as set forth in Restatement of the Law (1942) Judgments, section 68, comment n, at page 307, states: "Where the judgment is based upon the matters litigated as alternative grounds, the judgment is determinative on both grounds, although either alone would have been sufficient to support the judgment." This rule is followed in this state (*Evans v. Horton* (1953) 115 Cal.App.2d 281 [251 P.2d 1013]; *Bank of America* v. *McLaughlin etc. Co.* (1940) 40 Cal.App.2d 620 [105 P.2d 607]). In *McLaughlin*, this court, at page 628, noted that "'If the questions involved in a suit are tried and decided, no matter how numerous they may be, the estoppel of the judgment will apply to each point so settled, in the same degree as if it were the sole issue in the case." The rationale behind the rules quoted above is that if a party has an opportunity and motivation to fully litigate an issue, then he can anticipate the potential barring effect of an adverse judgment.

Here, as indicated above, the domicile issue was fully litigated and clearly necessary to the determination of both the dissolution and the husband's subsequent motion. In the instant case, where both parties have energetically litigated the issue of domicile, it was necessary for the trial court to rule upon the matter. *Winters* v. *Lavine* (2d Cir. 1978) 574 F.2d 46, noted at page 67: "[A]n alternative ground upon which a decision is based should be regarded as 'necessary' for purposes of determining whether the plaintiff is precluded by the principles of res judicata or collateral estoppel from relitigating in a subsequent lawsuit any of those alternative grounds."

Next, the husband points out that the issue of federal preemption as to military pensions was not settled at the time of the dissolution in 1972. However, since *French v. French* (1941) 17 Cal.2d 775 [112 P.2d 235, 134 A.L.R. 366], the courts of this state uniformly held that vested military pensions were community property. *In re Marriage of Brown* (1976) 15 Cal.3d 838 [126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R. 3d 164], eliminated the distinction made by *French* between vested and nonvested pensions (*Henn* v. *Henn* (1980) 26 Cal.3d 323, fn.

2 at p. 328 [161 Cal.Rptr. 502, 605 P.2d 10]). Although there may have been some room for a preemption argument as to nonvested pensions in 1971 and 1972 (see *Smith* v. *Lewis* (1975) 13 Cal.3d 349, 357 [118 Cal.Rptr. 621, 530 P.2d 589, 78 A.L.R. 3d 231]), the matter was laid to rest in 1974. In *In re Marriage of Fithian* (1974) 10 Cal.3d 592 [111 Cal.Rptr. 369, 517 P.2d 449], the court held at page 604: "Congress' purpose in creating the retirement pay system was to enhance the morale of the serviceman and to encourage him to remain in the military .... The conclusion is inescapable that retirement pay is awarded in return for services previously rendered and therefore is divisible as community property...." The court concluded that Congress had not preempted the application of California community property law to federal military pensions.

The husband also argues about the retroactive effect of *Fithian, supra,* 10 Cal.3d 592. As indicated above, the argument is not relevant as to the status of his vested pension which has been settled since *French* v. *French, supra,* 17 Cal.2d 775. Furthermore, retroactivity of *Fithian* is significant only as to nonvested pensions. Husband urges[4] that the reasoning in *In re Marriage of Brown, supra,* 15 Cal.3d, pages 850-851, also applies to his vested military pensions. *Brown,* however, clearly indicated that its rationale was not applicable to vested pensions, as the court stated at page 850, "if we accord complete retroactivity to our decision today we might reopen controversies long settled by final judgment. Undoubtedly in the last 35 years since the rendition of *French* v. *French,* counsel, relying on that decision, have often failed to list nonvested pension rights as among the community assets of the marriage. In some cases the inability of the nonemployee spouse to assert an interest in nonvested pension rights may have induced the court to award additional alimony."

More recently, our Supreme Court reiterated the rule that military retirement pensions are community property, and that *Fithian, supra,* 10 Cal.3d 592, applies retroactively. In *Henn* v. *Henn, supra,* 26 Cal.3d, the court held at page 329: "*Fithian* did not overturn a settled rule of law. Neither this court nor any California Court of Appeal had ever held that the supremacy clause of the United States Constitution precluded the division of federal military retirement pay as community property under state law. (See *Fithian, supra,* 10 Cal.3d at pp. 596-597.) Since it was never the law that the supremacy clause requires fed-

---

[4]Husband's brief relied on *Raudebaugh* v. *Young* (Cal.App.) and since decertified by order of the Supreme Court dated February 21, 1979.

eral military retirement pay to be excepted from treatment as community property under the California Civil Code, it would be anomalous for this court to now establish this erroneous proposition as the rule governing pensions accruing prior to *Fithian*. To do so would deprive individuals of their valid rights under California law." Again, within the last few months, our Supreme Court unanimously approved, and reiterated its prior reasoning, in *In re Marriage of Milhan* (1980) 27 Cal.3d 765, 775-776 [166 Cal.Rptr. 533, 613 P.2d 812].[5]

■ Finally, the husband argues that the doctrine of collateral estoppel should not have been applied for equitable reasons. He relies on Restatement of the Law, *supra*, Judgments, section 70; *Lewis v. Superior Court* (1978) 77 Cal.App.3d 844 [144 Cal.Rptr. 1]; *Bridges v. Bridges* (1978) 82 Cal.App.3d 976 [147 Cal.Rptr. 471]; and *Sangiolo v. Sangiolo* (1978) 87 Cal.App.3d 511 [151 Cal.Rptr. 27]. The case at bar, however, is not analogous to *Lewis, Bridges* or *Sangiolo*. In *Lewis*, a nonemployee spouse, who was totally dependent upon her husband, was deprived of a share of pension because both parties failed to include the pension in the property settlement agreement. The court invoked the injustice exception to hold that the husband should not benefit to the wife's detriment under such circumstances. The equitable exception was similarly applied in *Bridges* and *Sangiolo*, where the pension had not been included in the community property divided at the time of dissolution. No similar equities are present here. Both parties agreed at the time of dissolution that the husband's vested pension rights were community property. As our Supreme Court explained in *Henn v. Henn*, *supra*, 26 Cal.3d 323, at page 330, under California law, a spouse's entitlement to a share of the community property arises at the time that

---

[5]In a supplemental memorandum filed pursuant to the parties' stipulation waiving oral argument, the husband attempted to rely on an unpublished opinion of this court (Div. Four) in which the United States Supreme Court subsequently granted certiorari but then postponed jurisdiction pending the hearing on the merits (*In re Marriage of McCarty*, 1 Civ. No. 45056, jur. postponed by an order of the United States Supreme Court dated Oct. 20, 1980). In any event, *McCarty* is not apposite here, as it did not involve a conflict between state and federal law as to the husband's military pension. The husband also cited *Cose v. Cose* (Alaska 1979) 592 P.2d 1230, in which the Alaska Supreme Court held that the federal supremacy clause prohibits application of state property settlement concepts on divorce to military retirement pay on grounds of congressional intent, and *Hisquierdo v. Hisquierdo* (1971) 439 U.S. 572 [59 L.Ed.2d 1, 99 S.Ct. 802]. *Hisquierdo*, however, resolved a conflict between California community property law and federal law as to a nonmilitary pension. *Hisquierdo* does not overrule *Fithian, supra*, as the controlling authority relating to military retirement benefits (*Gorman v. Gorman* (1979) 90 Cal.App.3d 454, 460-462 [153 Cal.Rptr. 479]). We have granted Donovan's motion to strike points II and III of the husband's reply to Donovan's supplemental memorandum.

the property is acquired, and is not altered except by judicial decree or on agreement of the parties. Here, the decree of dissolution and the subsequent determination of the husband's motion settled the status of the husband's vested military pension. Neither was appealed and both were final prior to the initiation of the instant action.

The order appealed from is affirmed.

Rouse, J., and Miller, J., concurred.

A petition for a rehearing was denied January 9, 1981, and appellant's petition for a hearing by the Supreme Court was denied February 5, 1981.