[Civ. No. 22735. Third Dist. Apr. 25, 1984.]

FILIPINO ACCOUNTANTS' ASSOCIATION, INC., et al., Plaintiffs and Respondents, v.
STATE BOARD OF ACCOUNTANCY, Defendant and Appellant.

1024

COUNSEL

John K. Van de Kamp, Attorney General, and Roy S. Liebman, Deputy Attorney General, for Defendant and Appellant.

Altshuler & Berzon, Fred H. Altshuler, George C. Harris, Robert L. Gnaizda and Armando M. Menocal III for Plaintiffs and Respondents.

OPINION

SIMS, J.—Respondents California State Board of Accountancy and its individual members (hereafter Board) appeal from a judgment awarding attorneys' fees to counsel for petitioner Filipino Accountants' Association, Inc., et al. (hereafter petitioners) pursuant to section 1988 of title 42 of the United States Code[1] after petitioners had prevailed in litigation against the

---

[1]All statutory references are to title 42 of the United States Code unless otherwise indicated.

Board. The Board does not contest the amount of fees awarded; it simply challenges the authority of the court to award fees under section 1988.

We conclude that, pursuant to decisions of the United States Supreme Court, petitioners were legally eligible for an award of fees under section 1988. Since the Board has not contended the magnitude of the award of fees was unreasonable, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Former Business and Professions Code section 5087 allowed the Board to grant waivers of the California Certified Public Accountant (CPA) Examination to any applicant for certification who held a comparable certificate or degree issued in another state or in a foreign country, "if the [Board of Accountancy] determines that the standards under which the applicant received such certificate or degree were as high as the standards established in [California] . . . ."[2]

On June 13, 1978, petitioners filed a petition for writ of mandate (Code Civ. Proc., § 1085) in Sacramento County Superior Court alleging that, since at least 1957, the Board had refused to exercise its authority under former Business and Professions Code section 5087 to grant waivers to accountants certified in the Philippines. Petitioners alleged that the Board consistently granted waivers of the California CPA examination to "Chartered Accountants," those licensed to practice in British Commonwealth countries,[3] although the standards for licensure in commonwealth countries were not as high as those in the Philippines. Petitioners alleged the Board's history of granting waivers to commonwealth—but not Philippine—licensed CPA's was arbitrary, unreasonable and an abuse of discretion, and constituted "intentional irrational discrimination against Philippine Certified Accountants and in favor of white persons based on race and national origin."

Petitioners alleged the Board violated mandatory duties imposed upon it by the due process and equal protection clauses of the United States and

---

[2]Former Business and Professions Code section 5087 was amended in 1980. (Stats. 1980, ch. 275, p. 545.) Current Business and Professions Code section 5087 allows the Board to grant waivers to applicants from other states of the union only.

[3]The British Commonwealth countries referred to in the petition were England, Ireland, Australia, Wales, New Zealand, Scotland, Canada, and South Africa.

California Constitutions, by 42 United States Code section 1981,[4] Civil Code sections 51 and 52, Labor Code section 1412, and Business and Professions Code section 16721. The petition requested a case-by-case review of the qualifications of Philippine CPA's who would otherwise qualify for examination waivers pursuant to former Business and Professions Code section 5087, as well as temporary admission to practice for Philippine CPA's whose waiver requests were not processed within six months after the alternative writ issued.

The case went to trial on the merits, and on October 29, 1980, the trial court issued its "Notice of Intended Decision," which provided in pertinent part that: "1. The Court finds that [the Board] abused its discretion by denying waivers under California Business and Professions Code section 5087 to applicants who were duly licensed as CPA's in the Philippines during the period 1957 through 1977. [¶] 2. [The Board] is, therefore, commanded to reevaluate applications received during the period 1957 through 1977 from all applicants who were duly licensed as CPA's in the Philippines using the same standard as was used in evaluating applicants from New Zealand, India and Australia, for the purpose of determining whether waivers pursuant to section 5087 should be granted." The trial court made no mention of petitioners' claims of racial or national origin discrimination, or of section 1981.

Following the trial court's announcement of its intended decision the parties entered into a stipulation for judgment, and judgment was entered pursuant to the stipulation on December 18, 1980. The judgment ordered the Board to reevaluate applications of Philippine CPA's as outlined in the notice of intended decision. The judgment expressly reserved the issue of attorneys' fees for later proceedings.

On March 27, 1981, petitioners noticed a motion for award of attorneys' fees pursuant to Code of Civil Procedure 1021.5, the court's equitable pow-

---

[4]Section 1981 provides: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

The state courts of California have accepted concurrent jurisdiction with the federal courts to adjudicate suits brought under section 1983. (*Williams* v. *Horvath* (1976) 16 Cal.3d 834, 837 [129 Cal.Rptr. 453, 548 P.2d 1125]; *Bach* v. *County of Butte* (1983) 147 Cal.App.3d 554, 560 [195 Cal.Rptr. 268].) The Board has not raised the question of the jurisdiction of the California state courts to entertain suits under section 1981. For present purposes, we assume California has accepted section 1981, as well as section 1983, jurisdiction. (See *Hayworth* v. *City of Oakland* (1982) 129 Cal.App.3d 723, 726 [181 Cal.Rptr. 214]; 1 Antieau, Federal Civil Rights Acts (2d ed. 1980) § 19, p. 34.)

ers under the "private attorney general" doctrine, and the federal Civil Rights Attorneys' Fees Awards Act (§ 1988).[5] Petitioners thought it important to obtain an award pursuant to section 1988 because the 1982 California Budget Act contained a provision ostensibly limiting attorneys' fee awards payable by the state pursuant to Code of Civil Procedure section 1021.5 to a maximum of $50,000. (Stats. 1982, ch. 326, p. 357.) Petitioners reasoned the state would be compelled to honor a judgment validly awarding fees in excess of $50,000 pursuant to the federal statute, an issue we explicitly refrain from addressing here.

On November 23, 1982, the trial court issued a statement of decision regarding the issue of attorneys' fees, which provided in pertinent part that: "California Code of Civil Procedure section 1021.5 and Title 42 United States Code section 1988 provide authority for an award of attorneys' fees to petitioners. [¶] This action has resulted in the enforcement of important rights affecting the public interest. These rights include *the rights of Filipino CPAs to equal protection of the laws under United States and California Constitutions;* the right of such individuals to practice their profession; the right of such individuals to be free from arbitrary and capricious treatment by the Board of Accountancy; and the right of minority communities and the public generally to be served by a wide range of professionals without regard to national origin." (Italics added.)

DISCUSSION

I

At the outset we note that this case assumes an unusual posture. The Board concedes the judgment's validity under Code of Civil Procedure section 1021.5 and challenges only the trial court's reliance on section 1988 as an alternative ground for its decision.

■ Ordinarily, when an appellate court concludes that affirmance of the judgment is proper on certain grounds it will rest its decision on those grounds and not consider alternative grounds which may be available. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 223, p. 4212; see *Agricultural Labor Relations Bd.* v. *Laflin & Laflin* (1979) 89 Cal.App.3d 651, 662-663, fn. 11 [152 Cal.Rptr. 800]; *Coalition for L.A. County Planning*

---

[5]The Civil Rights Attorneys' Fees Awards Act, codified as a part of section 1988, provides in pertinent part that: "In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

*etc. Interest* v. *Board of Supervisors* (1977) 76 Cal.App.3d 241, 246 [142 Cal.Rptr. 766].)

However, appellate courts depart from this general rule in cases where the determination is of great importance to the parties and may serve to avoid future litigation (6 Witkin, *op. cit. supra,* § 225, p. 4214; *Eye Dog Foundation* v. *State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 542 [63 Cal.Rptr. 21, 432 P.2d 717]), or where the issue presented is of continuing public interest and is likely to recur. (*John A.* v. *San Bernardino City Unified School Dist.* (1982) 33 Cal.3d 301, 307 [187 Cal.Rptr. 472, 654 P.2d 242].)

As we noted, the Legislature has placed an apparent limitation on the amount of attorneys' fees payable under Code of Civil Procedure section 1021.5. Without intimating that there may be a dispute as to collection of the judgment herein, we recognize that this appeal affords the Board its only opportunity to contest the award of fees under section 1988 lest the issue be waived and the judgment be entitled to res judicata effect. (See *Wall* v. *Donovan* (1980) 113 Cal.App.3d 122, 126 [169 Cal.Rptr. 644]; *Evans* v. *Horton* (1953) 115 Cal.App.2d 281, 286 [251 P.2d 1013].) Moreover, we believe the matter is of general public interest. Accordingly, we entertain the Board's appeal.

## II

We first examine the federal Civil Rights Attorneys' Fees Awards Act. "In *Alyeska Pipeline Service Co.* v. *Wilderness Society,* 421 U.S. 240 (1975), [the United States Supreme Court] reaffirmed the 'American Rule' that each party in a lawsuit ordinarily shall bear its own attorney's fees unless there is express statutory authorization to the contrary. In response Congress enacted the Civil Rights Attorneys' Fees Awards Act of 1976, 42 U.S.C. § 1988, authorizing the district courts to award a reasonable attorney's fee to prevailing parties in civil rights litigation. ■ The purpose of § 1988 is to ensure 'effective access to the judicial process' for persons with civil rights grievances. H. R. Rep. No. 94-1558, p. 1 (1976). Accordingly, a prevailing plaintiff ' "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." ' S. Rep. No. 94-1011, p. 4 (1976) (quoting *Newman* v. *Piggie Park Enterprises,* 390 U.S. 400, 402 (1968))." (*Hensley* v. *Eckerhart* (1983) 461 U.S. 424, 429 [76 L.Ed.2d 40, 47-48, 103 S.Ct. 1933], fn. omitted.)

■ In passing the Civil Rights Attorneys' Fees Act, Congress exercised its power under section 5 of the Fourteenth Amendment to set aside the

states' Eleventh Amendment immunity from retroactive relief. (*Hutto* v. *Finney* (1978) 437 U.S. 678, 693-694 [57 L.Ed.2d 522, 536-537, 98 S.Ct. 2565]; see *Maher* v. *Gagne* (1980) 448 U.S. 122, 131-132 [65 L.Ed.2d 653, 662-663, 100 S.Ct. 2570]; *Fitzpatrick* v. *Bitzer* (1976) 427 U.S. 445 [49 L.Ed.2d 614, 96 S.Ct. 2666].)

■ The act applies in state as well as federal courts. (*Maine* v. *Thiboutot* (1980) 448 U.S. 1, 10-11 [65 L.Ed.2d 555, 563, 100 S.Ct. 2502]; *Logan* v. *Johnson* (1982) 162 Ga.App. 777 [293 S.E.2d 47, 48]; *Royer* v. *Adams* (1981) 121 N.H. 1024 [437 A.2d 316, 318]; cf. *Serrano* v. *Unruh* (1982) 32 Cal.3d 621, 638-639, fn. 27 [186 Cal.Rptr. 754, 652 P.2d 985].)

In *Hensley* v. *Eckerhart, supra,* 461 U.S. 424 [76 L.Ed.2d 40] the United States Supreme Court addressed the issue of what it means to "prevail" for purposes of section 1988. The court explained: "A plaintiff must be a 'prevailing party' to recover an attorney's fee under § 1988. The standard for making this threshold determination has been framed in various ways. ■ A typical formulation is that 'plaintiffs may be considered "prevailing parties" for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.' *Nadeau* v. *Helgemoe,* 581 F.2d 275, 278-279 (CA1 1978). This is a generous formulation that brings the plaintiff only across the statutory threshold. It remains for the district court to determine what fee is 'reasonable.'" (461 U.S. at p. 433 [76 L.Ed.2d at p. 50], fns. omitted.)[6]

■ There is no question but that petitioners "prevailed" in the instant litigation in which they "acquired the primary relief sought." (*Taylor* v. *Sterrett* (5th Cir. 1981) 640 F.2d 663, 669, approved in *Hensley* v. *Eckerhart, supra,* 461 U.S. at p. 433, fn. 8 [76 L.Ed.2d at p. 50]; see *Illinois Welfare Rights Organization* v. *Miller* (7th Cir. 1983) 723 F.2d 564, 566.) Their clients obtained a reevaluation of their applications for licensure. In awarding fees the trial court expressly found that petitioners had vindicated Filipino CPA's rights to equal protection of the laws under the United States Constitution.

The Board argues that petitioners are not entitled to a fee award under section 1988 because they did not "prevail" *on their section 1981 claim.* The Board urges that: (1) at trial petitioners "abandoned" claims of racial discrimination and focused instead on national original discrimination,

---

[6]Apparently, the court was unanimous on this point. The court's opinion, by Powell, J., was joined by Burger, C. J. and White, Rehnquist, and O'Connor, JJ. Justice Brennan's dissent, in which he was joined by Marshall, Blackmun, and Stevens, JJ., expressly approves the court's definition of prevailing parties. (461 U.S. at p. 442 [76 L.Ed.2d at p. 56].)

which in the Board's view, will not support an action based on section 1981; and (2) petitioners' evidence failed to establish a *prima facie* case of *intentional* discrimination necessary to prevail under section 1981.

There are two fundamental problems with the Board's argument. ■ ■ ■ ■ First, because the instant case was disposed of by a stipulated judgment, analogous to a consent decree in federal court, the trial court was not required to enter a statement of decision containing findings of fact or delineating the basis of the court's decision.[7] (See Code Civ. Proc., § 632; Cal. Rules of Court, rule 232.) Therefore, the extent to which petitioners proved all elements of their section 1981 claim to the trial court is unknown. ■ Second, even where a civil rights act claim is litigated through judgment, a plaintiff need not prevail *on that claim* in order to be eligible for an award of fees under section 1988 provided that plaintiff's complaint has pleaded a "substantial" civil rights act claim and plaintiff prevails on a noncivil rights act claim that is factually related to the pleaded civil rights act claim.

Thus, in *Maher* v. *Gagne, supra,* 448 U.S. 122 [65 L.Ed.2d 653], plaintiffs attacked certain of Connecticut's welfare regulations on statutory and constitutional grounds. The suit was settled by entry of a consent decree without any determination that plaintiffs' constitutional rights had been violated. (448 U.S. at p. 124 [65 L.Ed.2d at p. 658].) The court addressed the issue of whether plaintiffs could be awarded fees where both statutory and constitutional claims[8] had been settled favorably to plaintiffs without adjudication. Following the lower federal courts that had considered the issue (see, e.g., *Kimbrough* v. *Arkansas Activities Ass'n* (8th Cir. 1978) 574 F.2d 423, 426-427; *Southeast Legal Defense Group* v. *Adams* (D.Ore. 1977) 436 F.Supp. 891; *Lund* v. *Affleck* (D.R.I. 1977) 442 F.Supp. 1109, 1112-1114, affd. (1st Cir. 1978) 587 F.2d 75; *White* v. *Beal* (E.D.Pa. 1978)

---

[7]The court entered a "Notice of Intended Decision" pursuant to the terms of then existing rule 232(a) of the California Rules of Court (the rule was amended in 1981 to substitute a "tentative decision" for an "intended decision"). The intended decision made no mention of section 1981. However, such a memorandum is tentative and not controlling on questions of fact or law tried to the court. (*Kinney* v. *Vaccari* (1980) 27 Cal.3d 348, 357 [165 Cal.Rptr. 787, 612 P.2d 877].) Although a memorandum of intended decision has been treated as a final and appealable order where it constitutes a final determination on the merits and contemplates no further judicial action to give the memorandum vitality as an order (see *Estate of Lock* (1981) 122 Cal.App.3d 892, 897 [176 Cal.Rptr. 358] and authorities therein cited), here such is not the case. The stipulated judgment itself indicates the court's memorandum of intended decision was not intended by the court or the parties to serve as a functional substitute for a judgment.

[8]In this context, the term "constitutional claim" is synonymous with the terms "Fourteenth Amendment claim" and "civil rights claim," for which fees may be awarded under section 1988.

447 F.Supp. 788), the court concluded fees could be awarded: "Under § 5 Congress may pass any legislation that is appropriate to enforce the guarantees of the Fourteenth Amendment. A statute awarding attorney's fees to a person who prevails on a Fourteenth Amendment claim falls within the category of 'appropriate' legislation. And clearly Congress was not limited to awarding fees only when a constitutional or civil rights claim is actually decided. We agree with the courts below that Congress was acting within its enforcement power in allowing the award of fees in a case in which the plaintiff prevails on a wholly statutory, non-civil-rights claim pendent to a substantial constitutional claim or in one in which both a statutory and a substantial constitutional claim are settled favorably to the plaintiff without adjudication. As the Court of Appeals pointed out, such a fee award 'furthers the Congressional goal of encouraging suits to vindicate constitutional rights without undermining the longstanding judicial policy of avoiding unnecessary decision of important constitutional issues.' 594 F.2d at 342. It is thus an appropriate means of enforcing substantive rights under the Fourteenth Amendment." (448 U.S. at pp. 132-133 [65 L.Ed.2d at p. 663], fns. omitted; see also *Illinois Welfare Rights Organization* v. *Miller, supra,* 723 F.2d at p. 566.)

In a footnote the *Maher* court cited a House Report which stated that fees could be awarded in an action if a constitutional claim, which had not been fully litigated, met the "substantiality test" of *Hagans* v. *Lavine* (1974) 415 U.S. 528, 537-543 [39 L.Ed.2d 577, 587-591, 94 S.Ct. 1372] and *United Mine Workers* v. *Gibbs* (1966) 383 U.S. 715, 725-729 [16 L.Ed.2d 218, 227-230, 86 S.Ct. 1130], provided the constitutional claim arose out of "a common nucleus of operative fact" with the nonconstitutional claim on which a plaintiff prevailed. (*Maher, supra,* 448 U.S. at p. 132, fn. 15 [65 L.Ed.2d at p. 663].)[9] In another footnote the *Maher* court expressed its

---

[9]The *Maher* court noted the legislative history underlying the Civil Rights Attorneys' Fee Award Act: "The legislative history makes it clear that Congress intended fees to be awarded where a pendent constitutional claim is involved, even if the statutory claim on which the plaintiff prevailed is one for which fees cannot be awarded under the Act. The Report of the Committee on the Judiciary of the House of Representatives accompanying H. R. 15460, a bill substantially identical to the Senate bill that was finally enacted, stated: [¶] 'To the extent a plaintiff joins a claim under one of the statutes enumerated in H. R. 15460 with a claim that does not allow attorney fees, that plaintiff, if it prevails on the non-fee claim, is entitled to a determination on the other claim for the purpose of awarding counsel fees. *Morales* v. *Haines,* 486 F.2d 880 (7th Cir. 1973). In some instances, however, the claim with fees may involve a constitutional question which the courts are reluctant to resolve if the non-constitutional claim is dispositive. *Hagans* v. *Lavine,* 415 U.S. 528 (1974). In such cases, if the claim for which fees may be awarded meets the "substantiality" test, see *Hagans* v. *Lavine, supra; United Mine Workers* v. *Gibbs,* 383 U.S. 715 (1966), attorney's fees may be allowed even though the court declines to enter judgment for the plaintiff on that claim, so long as the plaintiff prevails on the non-fee claim arising out of a "common nucleus of operative fact." *United Mine Workers* v. *Gibbs, supra,* at 725.' H. R.

approval of the *Hagans* substantiality test. (448 U.S. at p. 128, fn. 10 [65 L.Ed.2d at p. 660].)[10]

*Hagans* sets forth a test to determine whether a plaintiff has pleaded a claim that is sufficiently "substantial" to confer federal jurisdiction on the federal courts. (*Hagans* v. *Lavine, supra,* 415 U.S. at pp. 537-539 [39 L.Ed.2d at pp. 588-589].) *Hagans* defines "substantiality" in terms of its opposite, "insubstantiality." " ' "Constitutional insubstantiality" . . . has been equated with such concepts as "essentially fictitious," *Bailey* v. *Patterson,* 369 U.S., at 33; "wholly insubstantial," ibid., "obviously frivolous," *Hannis Distilling Co.* v. *Baltimore,* 216 U.S. 285, 288 (1910); and "obviously without merit," *Ex parte Poresky,* 290 U.S. 30, 32 (1933). The limiting words "wholly" and "obviously" have cogent legal significance. In the context of the effect of prior decisions upon the substantiality of constitutional claims, those words import that claims are constitutionally insubstantial only if the prior decisions inescapably render the claims frivolous; previous decisions that merely render claims of doubtful or questionable merit do not render them insubstantial for the purposes of 28 U.S.C. § 2281. A claim is insubstantial only if " ' "its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy.' " [Citations.]' " (*Hagans* v. *Lavine, supra,* 415 U.S. at pp. 537-538 [39 L.Ed.2d at p. 588], quoting *Goosby* v. *Osser* (1973) 409 U.S. 512, 518 [35 L.Ed.2d 36, 93 S.Ct. 854].)

We know of no principle that would allow us to disregard these views of the highest court in the land. ▮ Where the Supreme Court of the United States interprets a statute enacted by the Congress, that interpretation is binding upon the state courts of California.[11] (6 Witkin, *op. cit. supra,* Appeal, § 673, pp. 4586-4587; see *Chesapeake & O. R. Co.* v. *Martin*

Rep. No. 94-1558, p. 4, n. 7 (1976)." (*Maher* v. *Gagne, supra,* 448 U.S. at p. 132, fn. 15 [65 L.Ed.2d at p. 663].)

[10]The court was unanimous on this issue. (See 448 U.S. at pp. 123, 133-135 [65 L.Ed.2d at pp. 654, 664].)

[11]We note our own Supreme Court has indicated its approval of the substantiality doctrine and has adapted its reasoning to cases under Code of Civil Procedure section 1021.5. In *Woodland Hills Residents Assn., Inc.* v. *City Council* (1979) 23 Cal.3d 917 [154 Cal.Rptr. 503, 593 P.2d 200] the court took note of, and cited with approval, lower federal court decisions allowing attorneys' fees under section 1988 when a "substantial" civil rights claim is not fully litigated. (Pp. 937-938.) The court explained: "As these federal decisions teach, the fact that a plaintiff is able to win his case on a 'preliminary' issue, thereby obviating the adjudication of a theoretically more 'important' right, should not necessarily foreclose the plaintiff from obtaining attorney fees under a statutory provision." (P. 938.) Although this statement was dictum, it illustrates the court's strong approval of the logic underlying the "substantiality" doctrine in section 1988 cases.

(1931) 283 U.S. 209, 220-221 [75 L.Ed. 983, 51 S.Ct. 453]; *United States* v. *Reynolds* (1914) 235 U.S. 133, 148-149 [59 L.Ed. 162, 35 S.Ct. 86]; see 5 Witkin, Summary of Cal. Law (8th ed. 1974) Constitutional Law, § 67, pp. 3306-3307.)

 Here, petitioners have met all threshold criteria necessary for an award of fees.[12] As we have noted, they prevailed in the litigation. Since a respectable body of law supported their pleaded constitutional claims under section 1981, the claims were neither "essentially fictitious," "wholly insubstantial," nor "obviously frivolous." (See, e.g., *Manzanares* v. *Safeway Stores, Inc.* (10th Cir. 1979) 593 F.2d 968; *Ortiz* v. *Bank of America* (E.D.Cal. 1982) 547 F.Supp. 550; *Whatley* v. *Skaggs Companies, Inc.* (D.Colo. 1980) 502 F.Supp. 370, affd. in part and remanded in part (10th Cir. 1983) 707 F.2d 1129.) Finally, petitioners' state statutory claims arose out of the same common nucleus of operative fact as their section 1981 claim. (See *Maher* v. *Gagne, supra,* 448 U.S. at pp. 132-133 [65 L.Ed.2d at p. 663]; *United Mine Workers* v. *Gibbs, supra,* 383 U.S. at p. 728 [16 L.Ed.2d at p. 229]; compare *Hensley* v. *Eckerhart, supra,* 461 U.S. at pp. 434-436 [76 L.Ed.2d at pp. 51-52].) Petitioners were therefore legally eligible for an award of attorneys' fees under section 1988. (See *Illinois Welfare Rights Organization* v. *Miller, supra,* 723 F.2d at p. 567; *Milwe* v. *Cavuoto* (2d Cir. 1981) 653 F.2d 80, 84; *Allen* v. *Housing Authority of County of Chester* (E.D.Pa. 1983) 563 F.Supp. 108, 110; *Anderson* v. *Redman* (D.Del. 1979) 474 F.Supp. 511, 515; compare *Reel* v. *Arkansas Dept. of Correction* (8th Cir. 1982) 672 F.2d 693, 697.)

Here, the Board has expressly acknowledged it does not contest the amount of the trial court's award of fees. Rather, the Board has challenged the authority of the trial court to award any fees at all under section 1988. Since petitioners have crossed "the statutory threshold" of eligibility for fees (*Hensley* v. *Eckerhart, supra,* 461 U.S. at p. 433 [76 L.Ed.2d at p. 50]), the Board's challenge must fail.

---

[12]The Board contended in its opening brief that it was not a "person" subject to suit under section 1983. Since plaintiffs pleaded and pursued their claims under section 1981, we felt it unnecessary to address the Board's section 1983 contention. However, in its petition for rehearing, the Board asserts for the first time—in the trial court or in this court—that the Board is not subject to suit under section 1981. The Board argues suit must be brought against its individual members. We reject the Board's belated contention on the merits. Sections 1981 and 1983 have different origins and reflect different legislative purposes. (See, generally, *Skyers* v. *Port Authority of N.Y. & N. J.* (S.D.N.Y. 1976) 431 F.Supp. 79, 83.) A state agency is generally subject to suit under section 1981. (*Yarborough* v. *Illinois Dept. of Mental Health* (N.D.Ill. 1982) 538 F.Supp. 414, 417; see *Campbell* v. *Gadsden County Dist. School Bd.* (5th Cir. 1976) 534 F.2d 650, 655; *Skyers* v. *Port Authority of N.Y. & N.J., supra,* 431 F.Supp. at pp. 83-84; 1 Antieau, *op. cit. supra,* § 33, pp. 52-54.)

### DISPOSITION

The judgment is affirmed.

Regan, Acting P. J., and Carr, J., concurred.

A petition for a rehearing was denied May 25, 1984.