Filed 12/24/24  P. v. Firman CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D081974 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD239217) |
| MARCO ANTONIO FIRMAN, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Peter C. Deddeh, Judge.  Affirmed.

Patricia L. Brisbois, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal, Andrew Mestman, and Susan E. Miller, Deputy Attorneys General, for Plaintiff and Respondent.

# I

## INTRODUCTION

In 2013, a San Diego jury found Marco Antonio Firman guilty of the first degree murder of 27-year-old Tomas Ray in a gang-motivated attack. Years after the judgment of conviction became final, Firman petitioned to have his murder conviction vacated and to be resentenced under Penal Code section 1172.6.[1] The trial court issued an order to show cause and held an evidentiary hearing, but found that Firman remained guilty of murder under the State's current murder laws and therefore denied the petition.

Firman appeals the order denying his resentencing petition. He claims the order must be reversed because: (1) the trial court applied the wrong legal standard when it found him ineligible for relief; (2) the court relied on improper sources of information when evaluating the petition; and (3) there was insufficient evidence to support the order. We reject these arguments and affirm the order denying Firman's resentencing petition.

# II

## BACKGROUND

### A. *The Murder and Trial*[2]

At all times relevant to the case, Firman and codefendant Paul Salinas were members of the City Heights Juniors street gang. City Heights Juniors claimed a territory encompassed within a larger region claimed by a rival

---

[1]    Further undesignated statutory references are to the Penal Code.

[2]    "Because this appeal requires us to apply the substantial evidence standard of review, we state the facts in the light most favorable to the prosecution as the party that prevailed in the superior court." (*People v. Montanez* (2023) 91 Cal.App.5th 245, 251, fn. 7 (*Montanez*).)

gang, Eastside San Diego. The events at issue occurred a block from the territory claimed by City Heights Juniors.

On December 28, 2009, at about 9:30 p.m., Ray was walking near his home in the City Heights area of San Diego. He wore two silver chains around his neck. Ray was not a member of a street gang.

Firman and Salinas were walking in the same neighborhood that night. They both wore dark hooded sweatshirts and Firman wore a latex glove. Firman carried a loaded .22–caliber gun and Salinas carried a loaded .38–caliber gun.

Firman and Salinas approached Ray, apparently under the mistaken belief he was a member of Eastside San Diego. They asked Ray where he was from and he responded, "Nowhere." Firman then tried to punch Ray and take his silver chains. At some point during the attempted robbery, Firman told Salinas to "let him have it." Salinas then shot Ray three times, killing him. Firman and Salinas split up and ran in different directions.

Law enforcement arrived at the scene shortly after the shots were fired. Officers observed a Hispanic male, later identified as Firman, running away. They pursued him, but lost sight of him and were unable to apprehend anyone that night. However, they recovered a discarded knit cap, hooded sweatshirt, and glove from behind a bush located along Firman's escape path. With the benefit of DNA testing and the cooperation of an informant from within City Heights Juniors, law enforcement identified Firman and Salinas as the perpetrators and took them into custody.

By amended information, Firman and Salinas were charged with first degree murder (§ 187, subd. (a); count 1), and Firman was charged with unlawful possession of a firearm by a felon (former § 12021, subd. (a)(1); count 2). The amended information alleged gang enhancements (§ 186.22,

3

subd. (b)(1)) for both counts. For count 1, it alleged Salinas intentionally and personally discharged a firearm proximately causing great bodily injury and death to a person other than an accomplice (§ 12022.53, subd. (d)), and a principal personally used a firearm and proximately caused great bodily injury and death to a person other than an accomplice (*id.*, subds. (d), (e)(1)). Further, it alleged Firman had five prison priors (former § 667.5, subd. (b)), one serious felony prior (§ 667, subd. (a)(1)), and one strike prior (§§ 667, subds. (b)–(i), 1170.12).[3]

After a trial, a jury found the defendants guilty of all charges and found the sentencing enhancement allegations true. Firman also admitted the truth of the prior criminal conviction allegations. The trial court sentenced Firman to prison for an aggregate term of 17 years plus 80 years to life. It sentenced Salinas to an aggregate prison term of 22 years four months plus 75 years to life. On appeal, we affirmed the judgments of conviction. (*People v. Firman* (Oct. 20, 2014, D064110) [nonpub. opn.].)

B. *The Resentencing Proceedings*

In 2019, Firman filed a petition to have his murder conviction vacated and to be resentenced under section 1172.6. Initially, the trial court summarily denied the petition without issuing an order to show cause. However, our court reversed the summary denial order on the ground that the trial court had engaged in improper factfinding at the prima facie review stage. (*People v. Firman* (Dec. 13, 2021, D078560) [nonpub. opn.].) We remanded the matter to the trial court with instructions to issue an order to show cause and hold an evidentiary hearing. (*Ibid.*)

---

3    The amended information charged Salinas with additional crimes not pertinent to the current appeal.

4

On remand, the parties did not introduce new evidence for the evidentiary hearing; instead, they relied exclusively on the evidence that was admitted at the murder trial.  In Firman's trial court briefing, he argued he was no longer guilty of felony murder under the State's current murder laws because he was not Ray's actual killer, he never intended to kill Ray, and he did not act with reckless indifference to human life as a major participant in the attempted robbery.  By contrast, the People argued Firman remained guilty of felony murder because he intended to kill Ray and acted with reckless indifference to human life as a major participant in the attempted robbery.  Alternatively, they argued he was guilty of murder because he directly aided and abetted Ray's killing while harboring malice aforethought.

The trial court conducted an evidentiary hearing and denied Firman's petition for resentencing.  In denying the petition, the court opined, "[T]here [was] evidence to show [Firman] was trying to steal the victim's necklace in that he … punched the victim and then – and then Mr. Salinas shot him. [¶] And so … he set into motion a scenario where his – his codefendant ended up killing the victim.  And so, I mean, I think that demonstrates reckless indifference for human life and shows express malice, and so I'm going to deny [the] motion to resentence."

III

DISCUSSION

A. *Senate Bill No. 1437*

In 2018, the Legislature passed Senate Bill No. 1437 (Senate Bill 1437), which went into effect January 1, 2019.  The Legislature approved the bill to ensure more equitable sentencing for "offenders in accordance with their involvement in homicides."  (Stats. 2018, ch. 1015, § 1(b).)  As the bill's uncodified findings and declarations explain, "It is a bedrock principle of the

5

law and of equity that a person should be punished for his or her actions according to his or her own level of individual culpability." (*Id.*, § 1(d).)

"Senate Bill 1437 altered the substantive law of murder in two areas. First, with certain exceptions, it narrowed the application of the felony-murder rule by adding section 189, subdivision (e) to the Penal Code. Under that provision, 'A participant in the perpetration or attempted perpetration of a [specified felony] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2.' (§ 189, subd. (e).)" (*People v. Curiel* (2023) 15 Cal.5th 433, 448 (*Curiel*).)

"Second, Senate Bill 1437 imposed a new requirement that, except in cases of felony murder, 'a principal in a crime shall act with malice aforethought' to be convicted of murder. (§ 188, subd. (a)(3).) 'Malice shall not be imputed to a person based solely on his or her participation in a crime.' (*Ibid.*) One effect of this requirement was to eliminate liability for murder as an aider and abettor under the natural and probable consequences doctrine." (*Curiel, supra*, 15 Cal.5th at p. 449.)

"Senate Bill 1437 also enacted former section 1170.95, which created a procedural mechanism 'for those convicted of felony murder or murder under the natural and probable consequences doctrine to seek relief' where the two substantive changes described above affect a defendant's conviction." (*Curiel, supra*, 15 Cal.5th at p. 449.) Thereafter, the Legislature enacted Senate Bill No. 775, which ensured "that persons who were convicted of attempted

6

murder or manslaughter under a theory of felony murder and the natural probable consequences doctrine are permitted the same relief as those persons convicted of murder under the same theories." (Stats. 2021, ch. 551, § 1(a).) "[F]ormer section 1170.95 was renumbered as section 1172.6 without substantive change. (Stats. 2022, ch. 58, § 10.)" (*Curiel*, at p. 449.) For purposes of this opinion, we refer to this provision as section 1172.6.

Under section 1172.6, a petitioner initiates the resentencing process by filing a declaration averring that: (1) a charging document was filed against the petitioner allowing the prosecution to proceed under a theory of felony murder, natural and probable consequences murder, murder under another theory by which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine; (2) the petitioner was convicted of murder, attempted murder, or manslaughter following a trial, or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder; and (3) the petitioner could not presently be convicted of murder or attempted murder because of the changes to the murder laws that were implemented by Senate Bill 1437. (§ 1172.6, subds. (a)(1)–(3), (b)(1).) If the petitioner states a prima facie case for relief, the court must issue an order to show cause. (*Id.*, subd. (c).) Unless the parties stipulate that the petitioner is entitled to the relief sought, the court must then schedule an evidentiary hearing to determine whether to vacate the murder, attempted murder, or manslaughter conviction, recall the sentence, and resentence the petitioner on any remaining counts. (*Id.*, subd. (d)(1).)

At the evidentiary hearing, the prosecution bears the burden of proving, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under the amended murder laws. (§ 1172.6, subd. (d)(3).)

7

The court acts as an independent fact finder and is tasked with determining whether the prosecution met its burden of proof. (*People v. Cody* (2023) 92 Cal.App.5th 87, 110.) "A finding that there is substantial evidence to support a conviction for murder … is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (§ 1172.6, subd. (d)(3).) "The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion. … The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens. … If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges." (*Ibid.*)

On appeal from the denial of a petition for resentencing after an evidentiary hearing, "[w]e review the trial court's factual findings for substantial evidence and the court's application of those facts de novo." (*People v. Wilson* (2023) 90 Cal.App.5th 903, 916.) "In conducting our review, we consider the whole record in the light most favorable to the superior court's findings [citation], and we presume ' " 'every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence.' " ' [Citation.] We ask 'whether substantial evidence, defined as reasonable and credible evidence of solid value, has been disclosed, permitting the trier of fact to find guilt beyond a reasonable doubt.' [Citation.] And based on this whole record review, we ' "determine whether *any* rational trier of fact could have found the essential elements of the crime

8

... beyond a reasonable doubt." ' " (*People v. Hill* (2024) 100 Cal.App.5th 1055, 1066 (*Hill*).)

B. *Firman Has Not Demonstrated that the Trial Court Applied an Incorrect Legal Standard When it Ruled on his Resentencing Petition*

In this appeal from the denial of his resentencing petition, Firman argues the trial court might have applied an incorrect legal standard and erroneously reviewed the record from the murder trial for substantial evidence of his guilt, rather than sitting as an independent fact finder. He notes that the court did not state on the record that it was making independent factual findings to determine his eligibility for relief. We are not convinced the court misunderstood its role as fact finder or applied an incorrect legal standard when evaluating Firman's resentencing petition.

" 'In the absence of evidence to the contrary, we presume that the [trial] court "knows and applies the correct statutory and case law." ' " (*People v. Caparrotta* (2024) 103 Cal.App.5th 874, 905 (*Caparrotta*); see *Keep Our Mountains Quiet v. County of Santa Clara* (2015) 236 Cal.App.4th 714, 741 [" 'It is a basic presumption indulged in by reviewing courts that the trial court is presumed to have known and applied the correct statutory and case law in the exercise of its official duties.' "].) Thus, "a court's 'failure to "discuss" a particular standard does not imply it applied an incorrect standard,' " unless the record contains evidence to the contrary. (*People v. Johnson & Johnson* (2022) 77 Cal.App.5th 295, 322.) Consistent with this presumption, we must presume the trial court understood and fulfilled its role as an independent fact finder, unless the record indicates otherwise.

The appellate record contains no such contrary indication. The trial court did not state it would refrain from sitting as an independent fact finder or defer to the jury's findings in any way. It did not state it reviewed the record from the murder trial for substantial evidence. Nor did it declare that

9

it undertook a sufficiency-of-the-evidence review of the jury's verdicts. Further, the court stated it reviewed the parties' trial court briefs prior to the evidentiary hearing. In those briefs, both parties correctly articulated the court's statutory duties and the proper legal standard that applies at the evidentiary hearing. For all these reasons, we conclude Firman has failed to overcome the presumption that the trial court understood its role and applied the correct legal standard when ruling on the petition for resentencing.

C. *Firman Has Not Established that the Trial Court Improperly Based its Ruling on a Prior Appellate Opinion or its Own Recollections from Trial*

Next, Firman argues we must reverse the denial order because the trial court might have relied on impermissible sources of information to rule on the resentencing petition. He speculates that the court might have based its ruling on its own recollection of the murder trial, which it oversaw years earlier, or perhaps on the factual summaries taken from our court's prior appellate opinions. Firman's conjecture does not warrant a reversal of the order denying his resentencing petition.

As noted, a trial court evaluating a petition for resentencing at an evidentiary hearing "may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed." (§ 1172.6, subd. (d)(3).) The trial court may also rely on "the procedural history of the case recited in any prior appellate opinion," and any new or additional evidence offered by the parties subject to the rules of admissibility set forth in the Evidence Code. (*Ibid*.) However, the court may not base its resentencing decision on factual summaries drawn from prior appellate opinions (*People v. Flores* (2022) 76 Cal.App.5th 974, 988), or its own uncorroborated memories or recollections in those instances where the trial judge previously oversaw

10

the case (*People v. Tarkington* (2020) 49 Cal.App.5th 892, 910, fn. 15, abrogated on another ground in *People v. Lewis* (2021) 11 Cal.5th 952).

As we just observed, we must apply a presumption that the trial court knew and applied the law correctly when it ruled on Firman's resentencing petition in the absence of evidence to the contrary.  (*Caparrotta, supra*, 103 Cal.App.5th at p. 905.)  Thus, unless the record shows otherwise, we must presume the court relied only on permissible sources when it ruled on the resentencing petition.  Once again, the record does not overcome the applicable presumption.  Indeed, the trial court never stated or suggested it relied on its own memory of the murder trial or the factual summaries from prior appellate opinions when it evaluated Firman's petition.

Nonetheless, Firman contends he has overcome the presumption that the court considered only proper sources of information.  According to Firman, when the prosecution submitted its trial brief for the evidentiary hearing, it supplied the court with a CD containing the record from the murder trial.  However, one of the seven reporter's transcript volumes stored on the CD was only partially complete.  Because the court did not expressly comment on this partially incomplete transcript at the evidentiary hearing, Firman hypothesizes that "the trial court did not in all likelihood review the actual trial transcripts," and he assumes the court relied on its own memory of the trial and the factual summaries from our prior appellate opinions.

Firman has not overcome the presumption that the trial court knew and correctly applied the law by relying only on permissible sources to rule on the resentencing petition.  The trial court may simply have decided that the prosecution met its burden of proof, beyond a reasonable doubt, based on the nearly complete murder trial record that the prosecution provided on the CD.  Alternatively, the court could have reviewed and relied on the entire murder

11

trial record by referencing its own court files to supply the missing pages of the partially incomplete reporter's transcript volume. In either event, the trial court could have decided the resentencing petition in a proper manner, without resorting to impermissible sources of information like the court's own recollections or the factual summaries from our prior appellate opinions. Because the trial court could have ruled on the petition without referencing its own memory or our prior appellate opinions, Firman has not overcome the presumption that the court was aware of the law and followed it.

D. *Substantial Evidence Supported the Order Denying Resentencing*

Finally, Firman argues there was insufficient evidence to support the order denying his resentencing petition. We disagree.

As noted, amended section 189 provides that a participant in an enumerated felony in which a death occurs, like the attempted robbery at issue here, is liable for felony murder if "[t]he person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e)(3).) In this appeal, Firman does not dispute that the evidence was sufficient to support the trial court's implied finding that he was a major participant in the attempted robbery in which Ray was killed. However, he claims substantial evidence did not support the court's finding that he acted with reckless indifference to human life during the attempted robbery.

"Our Supreme Court has explained that '[r]eckless indifference to human life has a subjective and an objective element. [Citation.] As to the subjective element, "[t]he defendant must be aware of and willingly involved in the violent manner in which the particular offense is committed," and he or she must consciously disregard "the significant risk of death his or her actions create." [Citations.] As to the objective element, " '[t]he risk [of death] must be of such a nature and degree that, considering the nature and

12

purpose of the actor's conduct and the circumstances known to him [or her], its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation." ' " (*Hill, supra*, 100 Cal.App.5th at p. 1075.)

In *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), the Supreme Court outlined a number of considerations relevant to deciding whether a defendant has acted with reckless indifference to human life: (1) the defendant's knowledge that weapons would be used and/or his personal use of weapons; (2) the defendant's physical presence at the scene and his opportunity to restrain the killer or aid the victim; (3) the duration of the felony; (4) the defendant's knowledge of his accomplice's propensity to kill; and (5) the defendant's efforts to minimize the risk of violence in the commission of the felony. (*Id.* at pp. 618–623.) "[N]o one of these considerations is necessary, nor is any one of them necessarily sufficient." (*Id.* at p. 618.) Applying these factors to the case before us, we have little trouble concluding that substantial evidence supported the court's finding that Firman acted with reckless indifference to human life.

With respect to the first *Clark* factor, there was evidence that Firman and Salinas—both of whom were active City Heights Juniors gang members—were armed with loaded firearms the night Ray was shot and killed. The evidence showed that Firman carried a .22–caliber gun and Salinas carried a loaded .38–caliber gun into an area immediately adjacent to a territory claimed by rival gangs. Indeed, Firman admits in his opening appellate brief that "both Firman and Salinas were armed …." Further, in a recorded jailhouse conversation between Salinas and a City Heights Juniors informant, Salinas confessed to the informant that Firman told him, "let him have it," during their fatal confrontation with Ray. According to the

13

informant, " 'let him have it' means shoot him or let him have it."  From this evidence, a reasonable fact finder could conclude not only that Firman and Salinas intentionally carried loaded firearms into their encounter with Ray, but that Firman knew about Salinas' firearm—and intended him to fire it— when he instructed Salinas to "let [Ray] have it."  This factor weighs in favor of the trial court's finding of reckless indifference.  (See *Hill, supra*, 100 Cal.App.5th at p. 1075 [substantial evidence supported resentencing court's reckless indifference finding where petitioners were both armed].)

The second *Clark* factor also supports the court's reckless indifference finding.  Ample evidence—including the informant's trial testimony and DNA evidence taken from personal items discarded near the crime scene—proved Firman was physically present when Salinas shot Ray.  Although he was present, Firman did not restrain Salinas or try to moderate him.  On the contrary, he instigated the violence—first by trying to punch Ray and then by encouraging Salinas to "let him have it."  And, after Salinas shot Ray, the evidence showed Firman rendered no assistance to Ray as he lay dying.  Instead, he and Salinas split up and fled the crime scene in different directions.  This evidence provides significant support for the court's finding that Firman acted with reckless indifference to human life.  (See *Hill, supra*, 100 Cal.App.5th at p. 1075; *Montanez, supra*, 91 Cal.App.5th at p. 279.)

The parties have not directed us to any evidence relating to the third *Clark* factor, the duration of the attempted robbery.  Thus, we construe it as neutral to whether Firman acted with reckless indifference to human life.

With regard to the fourth *Clark* factor, we are aware of no evidence that Firman and Salinas committed crimes together prior to the attempted robbery that resulted in Ray's death.  However, the evidence established that the defendants were both active members of the City Heights Juniors street

14

gang. According to the prosecution's gang expert, the gang's primary activities included homicides and assaults with deadly weapons. Thus, at the very least, the evidence showed Firman was aware of Salinas' membership in a street gang that committed homicides and assaults.

Finally, the fifth *Clark* factor weighs heavily in support of the court's finding that Firman acted in a manner that was recklessly indifferent to human life. There is no evidence Firman minimized the risk of violence on the fatal night in question. On the contrary, the evidence convincingly showed that Firman anticipated a prospect of violence and disregarded the risk, or perhaps even went in search of the violence that ultimately ensued. Indeed, the evidence showed Firman and Salinas, both gang members, carried loaded firearms while walking the streets near a disputed gang territory at night. Firman wore a latex glove, which suggests he anticipated a violent encounter and hoped to escape detection thereafter. Firman and Salinas then confronted an innocent victim, Ray, under the faulty assumption he belonged to a rival gang. During the encounter, Firman instigated violence by trying to punch Ray and instructing Salinas to "let him have it." Collectively, this evidence gives rise to a strong inference that Firman was aware of the risk of life-threatening violence and expected that he, or his companion, would inflict it upon others.

In sum, substantial evidence supported the trial court's finding that Firman acted with reckless indifference to human life. Because it is undisputed that Firman was a major participant in the attempted robbery at issue, and the evidence was sufficient to support the trial court's reckless indifference finding, the trial court correctly found that Firman remained

15

guilty of felony murder.  Therefore, Firman was ineligible for relief and the trial court correctly denied his petition for resentencing. [4]

IV

DISPOSITION

The order is affirmed.

McCONNELL, P. J.

WE CONCUR:

HUFFMAN, J.

IRION, J.

---

[4]     In light of our determination that substantial evidence supported the trial court's reckless indifference finding, it is unnecessary for us to assess whether the evidence was sufficient to support the court's alternative finding that Firman directly aided and abetted malice murder.  (See *Filipino Accountants' Assn. v. State Bd. of Accountancy* (1984) 155 Cal.App.3d 1023, 1029–1030 [generally, "when an appellate court concludes that affirmance of the judgment is proper on certain grounds it will rest its decision on those grounds and not consider alternative grounds"].)