Filed 11/19/13  Sanfilippo v. Wells Fargo Advisors CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| DONNA SANFILIPPO, | D062888 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2011-00084954-CU-OE-CTL) |
| WELLS FARGO ADVISORS, INC. et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County, Judith F. Hayes, Judge.  Affirmed.

Grady and Associates and Dennis M. Grady, Scott L. Zielinski, for Plaintiff and Appellant.

Paul, Plevin, Sullivan & Connaughton and E. Joseph Connaughton, Emily J. Fox, for Defendants and Respondents.

Plaintiff and appellant Donna Sanfilippo (Sanfilippo) sued defendants and respondents Wells Fargo Advisors, Inc. (Wells Fargo), her ex-husband, Joe Sanfilippo,[1] and three Wells Fargo employees in their individual capacities: Gary Endres, Don Overbeck and Michael Barnes (collectively respondents). Sanfilippo alleged causes of action for (1) marital status discrimination under the California Fair Employment and Housing Act (FEHA; Gov. Code, § 12940 et seq.); (2) gender discrimination under FEHA; (3) wrongful termination in violation of public policy; (4) interference with prospective economic advantage; (5) violation of California's unfair competition law (UCL; Bus. and Prof. Code, § 17200, et seq.); (6) violation of Labor Code section 300; (7) violation of Labor Code section 2800; (8) conversion and conspiracy to commit conversion; and (9) fraudulent concealment and conspiracy to defraud.

Respondents successfully moved for summary judgment on the following grounds: (1) Sanfilippo failed to state a prima facie case for either claim of discrimination as she was terminated for a legitimate nondiscriminatory reason; (2) the wrongful termination cause of action could not be sustained because there was no basis for the underlying discrimination claims; (3) the cause of action for interference with prospective economic advantage is barred by the statute of limitations; (4) there was no statutory violation or wrongful conduct by Wells Fargo to support the UCL cause of action; (5) Labor Code section 300 does not provide for a private right of action; (6) there

---

[1] Sanfilippo's claims against Joe Sanfilippo in the underlying action were later dismissed with prejudice.

was no Labor Code section 2800 violation because Wells Fargo reimbursed Sanfilippo for all of her business related losses; and (7) the claims for conversion and fraudulent concealment were barred by the workers' compensation exclusivity rule and, alternatively, they were previously adjudicated in the family court.

Sanfilippo contends the trial court erred because she had established triable issues of material fact to defeat summary judgment. We conclude there is no basis for that contention, and therefore affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Starting in the mid-1990's, Sanfilippo and her husband worked jointly as stockbrokers at Wells Fargo, and following its procedures, split their commissions. At one point, Sanfilippo received 40 percent of the commissions, and her husband received 60 percent. However, in late 2008, Sanfilippo learned from Endres, a former branch manager, that the percentage split was changed to 20 percent for her and 80 percent for her husband. In 2008, the Sanfilippos separated without informing Wells Fargo. In 2009, Sanfilippo filed for divorce.

In June 2009, Overbeck, a Wells Fargo first vice president, warned Sanfilippo that she needed to earn $10,000 more in commissions or she would be terminated. He gave her a second warning in August 2009.

In December 2009, Sanfilippo was informed by letter that Wells Fargo had terminated her employment the previous month because she had failed to meet performance expectations.

In January 2011, Sanfilippo filed a lawsuit against respondents.

3

On July 10, 2012, the Sanfilippos reached a dissolution settlement agreement in family court. Its terms were read into the transcript of the proceedings: "In . . . regard to the book of business . . . [husband] shall pay [Sanfilippo] the sum of $400,000 in return for her release of . . . any and all community property claims regarding the accounts [that] currently or at any other time were managed by [husband] at Wells Fargo or any of its predecessor firms. . . . [¶] [Sanfilippo] further releases any claims against [husband] for any interest [she] may or may not have in any alleged book of business." (Capitalization omitted.)

On July 30, 2012, the trial court granted respondents' motion for summary judgment, ruling Sanfilippo had failed to raise triable issues of material fact regarding the different claims. Specifically, the court found (1) Sanfilippo did not rebut respondents' explanation of their reasons for terminating Sanfilippo and there was no showing of discriminatory animus on respondents' part; therefore, the marital status and gender discrimination causes of action could not be sustained; (2) absent a showing of underlying discrimination, the wrongful termination cause of action could not be proved; (3) the claim for interference with prospective economic advantage was barred by the statute of limitations; (4) the UCL claim failed because there was no showing that Wells Fargo violated any law or engaged in unfair conduct; (5) Sanfilippo had admitted in her deposition that Wells Fargo had reimbursed her for all of her business losses, and the family court had resolved the financial dispute between the Sanfilippos; therefore, the claims of Labor Code violations were unsupported by the facts; and (6) the workers'

4

compensation exclusivity rule barred the causes of action for conversion and fraudulent concealment.

## DISCUSSION

Summary judgment may be granted only if there is no triable issue of material fact and the party is entitled to judgment as a matter of law. (Code Civ. Proc.,[2] § 437c, subd. (c).) A defendant moving for summary judgment has the burden of presenting evidence that negates an element of plaintiff's claim or evidence that the plaintiff does not possess and cannot reasonably expect to obtain evidence needed to support an element of the claim. (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460; *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.) If the defendant meets this burden, the burden shifts to the plaintiff to set forth "specific facts" showing that a triable issue of material fact exists. (§ 437c, subd. (p)(2).)

We review de novo the trial court's grant of summary judgment. (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1039; *Lonicki v. Sutter Health Central* (2008) 43 Cal.4th 201, 206.) We take the facts from the record that was before the trial court when it ruled on the motion and consider all the evidence set forth in the moving and opposing papers, except those to which objections were made and sustained. (*Lonicki v. Sutter Health Central*, at p. 206; § 437c, subd. (c).) The court does not weigh the parties' evidence; rather, it must consider all the evidence and "all inferences reasonably deducible from the evidence." (§ 437c, subd. (c); *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 540-541;

---

[2] All statutory references are to the Code of Civil Procedure unless otherwise stated.

5

*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 856.)  However, "any doubts as to the propriety of granting a summary judgment motion should be resolved in favor of the party opposing the motion."  (*Reid v. Google, Inc.*, at p. 535; *Miller v. Bechtel Corp.* (1983) 33 Cal.3d 868, 874.)

Under FEHA, an employer is prohibited from discriminating against an employee based on marital status or gender.  (Gov. Code, § 12940, subd. (a).)  The court applies a "three-stage burden-shifting test" for discrimination claims.  (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 354 (*Guz*); *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042 (*Yanowitz*).)  At trial, the plaintiff employee bears the initial burden of establishing a prima facie case of discrimination.  If he or she does so, a presumption of discrimination arises.  (*Guz*, at p. 354; *Yanowitz*, at p. 1042.)  The burden then shifts to the employer to rebut the presumption by producing admissible evidence that its adverse employment action was taken for a legitimate, nondiscriminatory reason.  (*Guz*, at pp. 355-356; *Yanowitz*, at p. 1042.)  If the employer succeeds, the burden shifts back to the plaintiff to "attack the employer's proffered reasons as pretexts for discrimination," or to offer other evidence of intentional discrimination.  (*Guz*, at p. 356; *Yanowitz*, at p. 1042.)

A defendant moving for summary judgment may skip to the second step of the analysis by demonstrating it has a legitimate business reason, unrelated to marital status, gender, or other protected classifications.  (*Guz*, *supra*, 24 Cal.4th at p. 357.)  The plaintiff then has "the burden to *rebut* this facially dispositive showing by pointing to evidence which nonetheless raises a rational inference that intentional discrimination occurred."  (*Ibid*.)

6

# I. *Cause of Action for Marital Status Discrimination*

Sanfilippo contends that in a February 2009 meeting with Endres, she requested that he restore the Sanfilippos' original commission split that Wells Fargo had altered without her permission. Endres refused on grounds that she was in the process of divorcing her husband. Sanfilippo claims Endres's statement provided proof that Wells Fargo acted out of animus based on her marital status as a separated person. Her subsequent efforts to get Wells Fargo managers to change the commission split also failed, and she concludes their inaction was based, at least in part, on her marital status.

Sanfilippo's contention fails because the primary evidence she relies on to show animus deals with her version of the February 2009 meeting with Endres. However, the trial court sustained respondents' objections to that evidence. Sanfilippo does not challenge the trial court's evidentiary rulings; therefore, we do not rely on those portions of her contention that restate evidence to which objections were sustained. (*Wall Street Network, Ltd. v. New York Times Co.* (2008) 164 Cal.App.4th 1171, 1181.)

The other evidence Sanfilippo relies on to support her claim of discriminatory animus derives from Endres's deposition testimony, in which he was asked whether he had contemplated reverting the Sanfilippos' commission split to the original percentages. Endres said no, explaining that at the February 2009 meeting, he told Sanfilippo he would have to check with Joe Sanfilippo about the matter, given that Endres was just learning the Sanfilippos were separating or divorcing.

We conclude Wells Fargo met its burden by producing admissible evidence that its motive for terminating Sanfilippo was unrelated to her marital status.  Specifically, notwithstanding Wells Fargo's warning, Sanfilippo failed to increase her commission to $10,000 per month.  Wells Fargo applied the same standards regarding commission levels and disciplinary proceedings to all financial consultants, independently of marital status.

The burden next shifted to Sanfilippo to rebut Wells Fargo's evidence by pointing to evidence which nonetheless showed that Wells Fargo's decision to terminate her "[was] actually made on the prohibited basis" of marital status discrimination.  (*Guz*, *supra*, 24 Cal.4th at p. 358.)  Sanfilippo failed to meet her burden because she provided no direct evidence that the reasons given for her termination were pretextual.  She likewise provided insufficient circumstantial evidence of pretext, that is, evidence that was sufficiently " ' "specific" and "substantial" ' " to show that respondents were more likely motivated by a discriminatory reason.  (*Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 69.)  Therefore, the court did not err in adjudicating this cause of action in Wells Fargo's favor.  "[A]n employer is entitled to summary judgment if, considering the employer's innocent explanation for its actions, the evidence as a whole is insufficient to permit a rational inference that the employer's actual motive was discriminatory."  (*Guz*, at p. 361; fn. omitted.)

## II.  *Cause of Action for Gender Discrimination*

In arguing that Wells Fargo discriminated against her because of her gender, Sanfilippo relies on the same evidence as that regarding her marital status discrimination claim.  Specifically, she asserts:  "Given that Endres made gender[-]related comments

8

while informing [her] at this February 2009 meeting that he would not rectify the compensation structure that [she] learned was incorrect and detrimental to her; and given that after this February 2009 meeting [she] was subjected to further adverse employment actions including termination, a jury could have found that these actions were taken against [her] due to her gender." (Some capitalization omitted.) Sanfilippo adds that despite her "repeated attempts to ask management to correct the unauthorized commission split, unauthorized client asset and client reassignment, and wage reallocation, these issues never were corrected. Instead, [she] was given two separate warnings . . . , denied access to her clients, given goals with which she could never comply, and ultimately terminated. . . . In contrast, Mr. Sanfilippo, a male broker with whom [she] shared a pool of clients, still works for [Wells Fargo] and was allowed to keep all his client assets, commissions, and bonuses, despite [her allegations]."

As noted, the trial court excluded evidence related to the February 2009 meeting, and Sanfilippo does not challenge that evidentiary ruling on appeal; therefore, we do not consider it. In any event, Wells Fargo's justification for terminating Sanfilippo is nondiscriminatory and relates to her failure to increase her commission earnings. Sanfilippo has failed to produce evidence attacking Wells Fargo's proffered reason as a pretext for discrimination. (*Yanowitz*, *supra*, 36 Cal.4th at p. 1042.) Accordingly, we conclude the trial court did not err in summarily adjudicating this claim.

### III. *Cause of Action for Wrongful Termination*

Sanfilippo's cause of action for wrongful termination is based on the same FEHA claims of marital status and gender discrimination that we concluded lack merit. "As a

result, the wrongful termination claim fails for the same reasons as the FEHA claim[s.]" (*Arteaga v. Brink's, Inc.* (2008) 163 Cal.App.4th 327, 355.)

IV. *Cause of Action for Interference with Prospective Economic Advantage*

Under section 335.1, Sanfilippo was required to bring a lawsuit for interference with prospective economic advantage within two years after the cause of action accrued. The limitations period begins when the plaintiff suspects, or should suspect, that she has been wronged. (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1114.) "While resolution of the statute of limitations issue is normally a question of fact, where the uncontradicted facts established through discovery are susceptible of only one legitimate inference, summary judgment is proper." (*Id.* at p. 1112.)

Here, application of the discovery rule supports the trial court's judgment. Sanfilippo concedes in her opening brief that she "learned of a commission change with Mr. Sanfilippo in or about December 2008." Nonetheless, she contends such knowledge "does not constitute sufficient notice to satisfy the 'discovery rule' that would begin the running of the statute of limitations" because "[i]t was only later . . . that [she] learned many more facts related to the unauthorized alteration of her pay structure, among other unlawful actions, with [Wells Fargo]." We conclude that in light of the undisputed fact Sanfilippo learned of the commission change in 2008, she had sufficient information at that time to know she had been wronged; therefore, she was required to bring her cause of action by 2010 under the statute of limitations. Accordingly, her claim brought in her 2011 lawsuit was time-barred.

10

## V. *UCL Cause of Action*

The trial court rejected Sanfilippo's UCL claim, finding she had "failed to create triable issues of material fact as to an applicable predicate violation of the law or unfair conduct." On appeal, Sanfilippo's argument challenging the trial court's ruling is comprised of two paragraphs: one discussing Business and Professions Code section 17200, and the other asserting her substantive argument that "[she] does raise enough triable issues of material fact related to her eight other causes of action contained in her complaint to, at very least, defeat the [summary judgment motion]. Thus, this cause of action was erroneously dismissed."

Sanfilippo's cursory argument is insufficient to defeat the grant of summary judgment. " ' " 'Instead of a fair and sincere effort to show that the trial court was wrong, appellant's brief is a mere challenge to respondents to prove that the court was right.' " ' [Citation.] Therefore, plaintiff's contention that the trial court erred by granting defendants' motion for summary judgment is deemed waived." (*Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115-1116.)

In any case, as this court noted, a claim under Business and Professions Code section 17200 is a derivative one. Because all of Sanfilippo's other claims fail, and there was no showing Wells Fargo engaged in wrongdoing, this UCL claim also fails. (*Aleksick v. 7-Eleven* (2012) 205 Cal.App.4th 1176, 1185 ["When a statutory claim fails, a derivative UCL claim also fails."].)

11

## VI. *Cause of Action for Violation of Labor Code Section 300*

Labor Code Section 300 subdivision (b)(2) provides that no assignment of wages is valid unless "[w]here the assignment is made by a married person, the written consent of the spouse of the person making the assignment is attached to the assignment."

The trial court ruled Sanfilippo had failed to present "admissible evidence of an assignment of her wages/commissions." It also concluded that the Sanfilippos' dissolution settlement had resolved the issue of the commissions. "The doctrine of collateral estoppel means that once an issue is litigated and determined, it is binding in a subsequent action." (*Wall v. Donovan* (1980) 113 Cal.App.3d 122, 125-126.)

On appeal, Sanfilippo contends she presented sufficient evidence to support this cause of action in the form of Endres's declaration, which stated: "The Sanfilippos worked as a team, maintaining the same pool of clients. They split the commissions on a percentage basis. Initially, Ms. Sanfilippo received a higher percentage of the commissions than Mr. Sanfilippo. Over time, Mr. Sanfilippo requested that the percentage split be changed. First, it was changed to 60 [percent for] Mr. Sanfilippo and 40 [percent for] Ms. Sanfilippo. Later, the commissions were changed to 80 [percent for] Mr. Sanfilippo and 20 [percent for] Ms. Sanfilippo." Sanfilippo also points to Endres's deposition testimony in which he states that she told him she had not given her husband permission to change the commission split.

Sanfilippo claims the commission split issue was not fully resolved in the family court, noting that she and her husband separated in September 2008, but Wells Fargo notified her about her termination in December 2009. She claims her wages earned

12

between those dates were not considered community property for family court purposes. We conclude that in the family court settlement, Sanfilippo completely disclaimed any interest in Joe Sanfilippo's book of business and all commissions arising from it. The resolution of this matter in the family court barred its relitigation in the underlying action. In several cases, "courts have made it clear that family law cases 'should not be allowed to spill over into civil law.' " (*Burkle v. Burkle* (2006) 144 Cal.App.4th 387, 393; *Askew v. Askew* (1994) 22 Cal.App.4th 942, 965 ["[F]iling a separate civil action was duplicative of the family law action."].)

VII. *Labor Code Section 2800 Cause of Action*

The court found as a factual matter that Wells Fargo had paid Sanfilippo all monies owed. At her deposition, defense counsel asked Sanfilippo whether she had incurred any business expenses that Wells Fargo had not reimbursed her. She replied, "I don't recall."

Labor Code Section 2800 states: "An employer shall in all cases indemnify his employee for losses caused by the employer's want of ordinary care." On appeal, Sanfilippo argues that the statute's scope extends beyond simply reimbursable expenses. She specifically claims Wells Fargo caused her significant losses by its lack of ordinary care in failing to obtain her "written (or verbal) authorization before giving her earned commissions and accounts to Mr. Sanfilippo, denying her a bonus, refusing to return the percentage commission splits to the point at which [she] agreed, denying [her] access to her clients, denying her an office space, putting her on a [Performance Improvement Plan], putting her on a 'draw,' requiring her to average $10,000 in monthly commissions

13

or she would [be] terminated even though she had no clients or assets to manage, terminating her, and asking her to pay [Wells Fargo] a $5,894.01 'retention' bonus."

As noted, this matter involving the commission split was resolved in the family court; therefore, under the doctrine of collateral estoppel, the claim could not be litigated a second time. Accordingly, the trial court did not err in summarily adjudicating this claim against Sanfilippo.

VIII. *Causes Of Action for Conversion And Fraudulent Concealment*

Sanfilippo bases her claims of conversion and fraudulent concealment on the commission split. The trial court found she had not produced admissible evidence that Wells Fargo had converted her property or fraudulently concealed the commission split from her. The trial court ruled these causes of action were barred by the workers' compensation cause exclusivity rule and, alternatively, there was no evidence Wells Fargo knew of the Sanfilippos' separation, or changed the commission split in contravention of the Sanfilippos' pooling agreement.

Sanfilippo argues on appeal, "[Wells Fargo], through its manager Endres, denied Sanfilippo her wages by changing her compensation structure without her knowledge or consent." (Some capitalization omitted.)

To state a cause of action for conversion, a plaintiff need only allege his or her " ' "ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages." ' " (*Shopoff & Cavallo LLP v. Hyon* (2008) 167 Cal.App.4th 1489, 1507.)

We conclude Sanfilippo failed to raise a triable issue of material fact regarding this claim because in her deposition she disclaimed that anybody at Wells Fargo held income owed to her. She was asked, "Do you believe anyone possessed income that you should have received instead of you?" She named only Joe Sanfilippo. Also, defense counsel asked her in a deposition, "You'll agree with me that all of the commissions that what I'll call the Sanfilippo team were owed were ultimately paid; correct? Your contention is about to whom those should have been paid. Right?" Sanfilippo replied in the affirmative. Sanfilippo admitted Wells Fargo did not withhold monies owed to her and her husband. Further, the family court resolved all matters involving the commission split, thus barring relitigation of the issue. Therefore, we conclude the trial court did not err in granting summary adjudication of these claims.

DISPOSITION

The judgment is affirmed.  Respondents are entitled to costs on appeal.


O'ROURKE, J.

WE CONCUR:


BENKE, Acting P. J.


AARON, J.